PEOPLE *v.* SHAW.

1. CRIMINAL LAW—DEFENDANT'S ATTIRE.
   A defendant should be brought into court in civilian clothes for trial and unchained, but precautionary measures may be taken within the discretion of the trial court to curtail violence and prevent escape.

2. SAME—TRIAL—DEFENDANT'S ATTIRE—DISCRETION.
   Trial court has discretion as to the attire worn by a criminal defendant during his trial.

3. SAME—MISTRIAL—DISCRETION OF COURT.
   A motion for mistrial puts in question the fairness and impartiality of the trial and is an appeal to the sound discretion of the court.

4. SAME—DEFENDANT'S ATTIRE.
   Defendant's right to appear at trial in civilian clothing rather than jail uniform *held*, a procedural right which may be bypassed and lost where there is a failure to assert it properly.

5. SAME—DEFENDANT'S ATTIRE—WAIVER.
   Failure to object to defendant's appearing in court before jury wearing county jail uniform rather than civilian clothing *held*, to be waiver of defendant's right to be tried wearing civilian clothing in case where jury was impaneled late on one afternoon, and jurors had taken their places in court the following morning before objection was made by defendant's counsel.

6. APPEAL AND ERROR—CONVICTION—MISCARRIAGE OF JUSTICE.
   Appellate court may not reverse a conviction of crime unless it is satisfied that there was such error committed on the trial as deprived the defendant of substantial rights or resulted in a miscarriage of justice (CL 1948, § 769.26).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4, 5, 7] 21 Am Jur 2d, Criminal Law §§ 239, 240.
[3] 53 Am Jur, Trial §§ 967, 970, 971.
[6] 5 Am Jur 2d, Appeal and Error §§ 786, 883, 959,

7. CRIMINAL LAW—DEFENDANT'S ATTIRE—PREJUDICE—MISCARRIAGE
OF JUSTICE.

> Trial of defendant wearing jail uniform rather than civilian
> clothing *held*, if error at all, not to be error so gross as to
> have deprived defendant of a fair trial and to have resulted
> in a miscarriage of justice in case, where defendant's counsel
> did not object to clothing of defendant until jury had taken
> its place in court on morning that trial began, and defendant
> had been before jury the day before in the jail uniform while
> the jury was impaneled (CL 1948, § 769.26).

Appeal from Genesee; Parker (Donn D.), J. Submitted Division 2 February 8, 1967, at Lansing. (Docket No. 2,224.) Decided June 27, 1967. Leave to appeal granted October 4, 1967. See 379 Mich 782, 381 Mich 467.

Herschel Shaw was convicted of breaking and entering in the nighttime. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Edward G. Henneke,* Assistant Prosecuting Attorney, for the people.

*Douglas M. Philpott,* for defendant.

HOLBROOK, P. J. Defendant, Herschel Shaw, participated with 2 others in stealing a television set and 2 stereo record players from a Flint business establishment during the evening of May 15, 1963. He was subsequently convicted by jury of the crime of breaking and entering in the nighttime[*] and sentenced to a term of 5 to 15 years at the State prison of Southern Michigan at Jackson.

The pertinent facts to this review are as follows: Defendant Shaw's trial began with the impaneling of a jury in the late afternoon of October 15, 1963.

---

[*] CL 1948, § 750.110, since amended by PA 1964, No 133 (Stat Ann 1965 Cum Supp § 28.305).

He attended this selection of a jury with codefendant Smith, codefendant Wright having previously entered a plea of guilty. Both Shaw and Smith were dressed in striped, county jail uniforms; however, no objection as to their appearance was raised by defense counsel that afternoon.

The following morning Shaw and Smith appeared for trial, again wearing the striped, county jail uniforms. After the jury entered the courtroom but before the prosecution's opening statement was made, defendant Shaw's counsel asked the court to excuse the jury. When the jury had retired, he made a motion for a mistrial claiming prejudicial denial of a fair and impartial trial. Defense counsel stated in part:

"I believe that the minds of the jury are unduly prejudiced towards Mr. Smith and Mr. Shaw due to the fact that they have been brought into court in county jail prison uniforms; that these men have clothes that they can come in here like any other human beings, not come in here dressed like criminals. I think that this presumption of innocence is tarnished somewhat when the jury can sit there and see these men in striped uniforms, and I think that, based upon the fact that they may not be granted a fair and impartial hearing, that this court should declare a mistrial."

The prosecutor called the trial court's attention to the fact that no objection to the attire of defendants had been made the previous afternoon and that he personally did not believe the jury would be prejudiced. Defense counsel then stated:

"As to the reason why it wasn't brought to the attention of the court this morning before the jury sat down is because the jury had an opportunity to see them yesterday. Now, we were somewhat pushed for time. Maybe it was an oversight on

my part, but the chances are I didn't think of it then.
But as far as what—in the prosecutor's opinion—he
cannot substitute his opinion for the opinion of the
jurors any more than I can. I believe that this would
happen. I have no assurance that this would. Now,
I would suggest that—a suggestion that the jury
disregard this or ask them a question, would they be
prejudiced by these men coming into court in this
uniform, invariably, the answer would be no. We
can't get inside their minds. The presumption of
innocence, in my opinion, is tarnished the minute
they walk in here. They are prisoners. The aver-
age person thinks if a person is under arrest, he has
committed a crime, he is guilty of something, other-
wise he wouldn't be here."

The motion for a mistrial was denied, the trial
court indicating that defense counsel had known for
some time that the case had been set for trial and
could have arranged for defendants to appear
clothed as he thought proper. Further, the court
indicated the lateness of the motion. The trial then
proceeded terminating in the convictions of Shaw
and Smith. Only defendant Shaw has appealed.

The sole question for review is whether there
was a denial of defendant Shaw's right to a fair
and impartial trial when he appeared for jury selec-
tion and trial attired in a striped, county jail
uniform.

In the absence of any Michigan cases directly in
point, defendant urges this Court to adopt the rule
of law found in 21 Am Jur 2d, Criminal Law, § 239,
pp 275, 276:

"Trial of defendant in prison garb.
"Since the defendant, pending and during his trial,
is still presumed innocent, he is entitled to be
brought before the court with the appearance, dig-
nity, and self-respect of a free and innocent man,
except as the necessary safety and decorum of the

court may otherwise require. He is therefore entitled to wear civilian clothes rather than prison clothing at his trial. It is improper to bring him into the presence of the jury which is to try him, or the venire from which his trial jury will be drawn, clothed as a convict." (Footnotes omitted.)

*Eaddy* v. *People* (1946), 115 Colo 488 (174 P2d 717), one of 3 cases cited in support of the above rule of law, involved the trial of a Negro soldier wearing a United States Army uniform at the time of arrest but wearing striped overalls with the words "county jail" on them at trial. The Colorado supreme court found prejudicial error where objection was made and a request for the trial court to direct the proper officer to return defendant to the courtroom properly attired was overruled. It appears that the objection and request were made immediately upon defendant's being brought into court. Notwithstanding the fact that it lacked precedent that court stated as follows (pp 490–492):

"Ordinarily a defendant may be brought to trial in the garments in which he is apprehended unless he himself procures other fit garments, in which case he may wear them. If there is any substantial reason why a defendant should not stand trial in garb so worn or procured by him, then, after opportunity to procure proper clothing, he may be tried in any fit and decent clothing furnished by the jailor, and conventionally made coveralls of customary striped or other material should be adequate. The decision as to proper clothing should be within the sound discretion of the trial court which has the custody of the defendant; * * *

"The presumption of innocence requires the garb of innocence, and regardless of the ultimate outcome, or of the evidence awaiting presentation, every defendant is entitled to be brought before the court with the appearance, dignity, and self-respect of a

free and innocent man, except as the necessary safety and decorum of the court may otherwise require. Such right was not given this defendant."

On appeal, the defendant in *People* v. *William L. Thomas* (1965), 1 Mich App 118, raised in issue whether his appearance in court in prison uniform and in chains prejudiced the jury. We admitted there that it would have been better had he been brought into court in civilian clothes and unchained, but also noted that precautionary measures may be taken within the discretion of the trial court to curtail violence and to prevent escape. Also, see *People* v. *Henley* (1965), 2 Mich App 54, 57, 58.

That a court has discretion as to the criminal defendant's attire is manifest from both the *Eaddy Case* and our case of *People* v. *William L. Thomas, supra*. Further, this Court in *People* v. *Schram* (1965), 1 Mich App 279, at p 284, made a singularly helpful comment about the motion for a mistrial: "A motion for a mistrial, just as a motion for a new trial, puts in question the fairness and impartiality of the trial. It is an appeal to the sound discretion of the court." Because a trial court has this discretionary power we are led to conclude that the matter of a defendant's garb at trial is a procedural right. And therefore, like many other procedural rights, it may be bypassed and even lost where there is a failure to properly assert it.

In the instant case, the jury observed Shaw twice before objection was made: the previous afternoon during impaneling of a jury and again on the morning of trial. In view of the position that we have herein taken, defense counsel failed to timely assert the right of defendant to appear before the jury in his own clothing. Objection could and should have been made, as it appears to have been made in the

*Eaddy Case,* as soon as defendant entered the court-room prior to selection of the jury.

However, assuming an honest oversight as to defendant's attire on the afternoon of October 15, it still appears that no effort calling this claimed prejudice to the trial judge's attention was made the following morning *before* the jury assembled. It is easily deduced that defense counsel in making objection when he did, permitted the jury to observe defendant for a second time in jail garb.

Another of the 3 cases cited as supporting the above rule of law is *Collins* v. *State* (1940), 70 Okla Crim 340 (106 P2d 273). Faced with facts similar to those of the case at bar except that a request for defendant to appear in civilian attire was made before trial, the court therein stated that although the wearing of prison garb may be grounds for reversal, the defendant's conviction was not to be set aside where the evidence was undisputed, the testimony uncontradicted, and the sentence recommended by the jury was less than the maximum so that it appeared that defendant had not been prejudiced. Here, as in the *Collins Case,* there is undisputed evidence and uncontradicted testimony with respect to the defendant's involvement in the crime charged.

The last of the cases supporting the above rule of law, *Shultz* v. *State* (1938), 131 Fla 757 (179 So 764), can be distinguished. There the appellate court reversed the defendant's conviction where he appeared in prison garb but predicated its reversal on a conviction obtained by reason of circumstantial evidence. Our case clearly shows the conviction of defendant Shaw to be the result of direct evidence and consequently CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096) governs.

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of

this State in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or *for error as to any matter of pleading or procedure,* unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in *a miscarriage of justice.*" (Emphasis supplied.)

It would be most difficult to reach the conclusion that defendant's substantive rights were violated so as to deny him a fair and impartial trial. The trial judge instructed the jury as to the presumption of innocence, viz:

"You know from your previous cases that each defendant starts the trial of the case with a presumption of innocence in his favor, and this presumption continues throughout the course of the trial until you have reached the jury room and have arrived at the conclusion that the people have proven their case beyond a reasonable doubt."

In *People* v. *Kasem* (1925), 230 Mich 278, at p 290, the Michigan Supreme Court stated, "We have no right to reverse a conviction unless we are satisfied that there was such error committed on the trial as deprived the defendant of substantial rights or resulted in a miscarriage of justice." And in *People* v. *Ritholz* (1960), 359 Mich 539, Mr. Justice TALBOT SMITH stated on p 559: "We must be persuaded that the errors complained of were so gross as to have deprived defendant of a fair trial, that his conviction was, in truth, a miscarriage of justice." The objection as to the right of defendant Shaw to appear in civilian clothing was not timely made. Finally, in the language of *People* v. *Ritholz, supra,* we are not persuaded that the error complained of was so gross as to have deprived defendant of a fair trial,

that his conviction was, in truth, a miscarriage of justice.

Affirmed.

FITZGERALD and J. H. GILLIS, JJ., concurred.