## PEOPLE v. SHAW.

### OPINION OF THE COURT.

1. CRIMINAL LAW—DEFENDANT'S ATTIRE—DISCRETION OF COURT.

Ordinarily a court has no discretion as to the attire worn by a criminal defendant while in the courtroom and defendant, consonant with the presumption of innocence, is entitled to wear civilian clothing rather than prison clothing at his trial.

2. SAME—DEFENDANT'S ATTIRE—TIME OF OBJECTION.

Objection by defense counsel to defendant's appearing in courtroom wearing county jail uniform was not timely made where counsel failed to object to such clothing at an earlier session of court at which the jury was selected and made no attempt to adduce evidence that defendant had requested to wear his own clothes.

3. SAME—BREAKING AND ENTERING IN THE NIGHTTIME—EVIDENCE—FAIR TRIAL—JAIL UNIFORM.

Defendant, charged with breaking and entering in the nighttime, *held*, not to have been deprived of a fair trial, where his counsel failed to object to jail uniform defendant was wearing until after jury had taken its place in court on morning the trial began and defendant had been before jury the day before in the same clothing while jury was being impaneled, and evidence was presented identifying him as a participant in the crime and as to his possession of stolen goods shortly after the crime (CL 1948, §§ 750.110, 769.26).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 7] 21 Am Jur 2d, Criminal Law § 239.
[2, 3, 10] 21 Am Jur 2d, Criminal Law § 239; 53 Am Jur, Trial § 134.
[4] 21 Am Jur 2d, Criminal Law §§ 234, 235.
[6] 21 Am Jur 2d, Criminal Law §§ 221, 222, 234, 235.
[8] 5 Am Jur 2d, Appeal and Error § 867.
[9] 5 Am Jur 2d, Appeal and Error § 867; 21 Am Jur 2d, Criminal Law §§ 221, 222, 234, 235.

DISSENTING OPINION.

T. M. KAVANAGH, J.

4. CRIMINAL LAW—TRIAL—IMPARTIAL JURY.

*The Federal and State Constitutions guarantee to a criminal defendant substantive right to trial by an impartial jury (US Const, Ams 6, 14; Mich Const 1908, art 2, § 19).*

5. SAME—DEFENDANT'S ATTIRE—DUE PROCESS.

*Forcing a defendant to stand trial in prison clothing constitutes a deprivation of the due process guaranteed by the Federal and State Constitutions and such violation of a constitutional right is reversible error as a matter of law (US Const, Ams 6, 14; Mich Const 1908, art 2).*

6. SAME—TRIAL—IMPARTIAL JURY—TRIAL JUDGE.

*The duty to preserve and protect the criminal defendant's substantive right to a fair and impartial jury trial rests upon the trial judge whose duty it is to control all proceedings during the trial with a view to the expeditious and effective ascertainment of the truth regarding the matters involved (CL 1948, § 768.29).*

7. SAME—TRIAL JUDGE—BREACH OF DUTY—DEFENDANT'S ATTIRE.

*Trial judge in case of defendant charged with breaking and entering in the nighttime breached his common-law and statutory duty to protect the right of the accused to trial by an impartial jury where, after defense counsel in support of motion for mistrial had asserted that defendant had been denied right to change out of prison uniform prior to appearance in court, the judge made no attempt to ascertain the truth of that claim, such failure to act constituting an abuse of discretion (CL 1948, § 750.110).*

8. SAME—TRIAL JUDGE—BREACH OF DUTY—FAIR TRIAL.

*The Supreme Court on appeal must correct error that occurs in a criminal trial when there is such a breach of judicial duty as to infringe upon defendant's right to a fair trial before an impartial jury.*

9. SAME—TRIAL—IMPARTIAL JURY—OBJECTION.

*The right of a criminal defendant to trial by an impartial jury is a substantive and not merely a procedural right, and defendant may not lose such right by failure of counsel to timely object or assert defendant's right (US Const, Ams 6, 14; Mich Const 1908, art 2, § 19).*

10. SAME—DEFENDANT'S ATTIRE—OBJECTION.

*Objection of defense counsel to defendant's appearance in court in prison uniform was timely made where such objection took the form of a motion for mistrial at the session of court the morning after defendant's appearance before jury in prison uniform.*

Appeal from Court of Appeals, Division 2, Holbrook, P. J., and Fitzgerald and J. H. Gillis, JJ., affirming Genesee, Parker (Donn D.), J. Submitted November 13, 1968. (Calendar No. 9, Docket No. 51,844-1/2.) Decided February 3, 1969.

7 Mich App 187, affirmed.

Herschel M. Shaw was convicted of breaking and entering in the nighttime. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Assistant Prosecuting Attorney, for the people.

*Brownell, Gault & Andrews (Douglas M. Philpott,* of counsel), for defendant on appeal.

ADAMS, J. LeRoy Smith, Clayton Wright and defendant Herschel M. Shaw were jointly charged with breaking and entering in the nighttime.* The offense was alleged to have occurred May 15, 1963. On June 12, 1963, defendant was afforded court-appointed counsel. On October 15, 1963, codefendant Wright entered a plea of guilty to the charge.

On Otcober 15, 1963, at 4:30 p.m. the case against defendant and LeRoy Smith was begun. Defendant's court-appointed attorney appeared on his be-

---

* CL 1948, § 750.110, since amended by PA 1964, No 133 (Stat Ann 1968 Cum Supp § 28.305).—REPORTER.

half. A jury was drawn and sworn. Court then recessed until the following day.

On October 16, 1963, upon the reconvening of court, Ollie B. Bivins, attorney for the defendant, addressed the court. The following took place:

"*Mr. Bivins:* This is a motion, sir, that is something that has occurred since we have impaneled the jury that I would like to make a court record—bring it to the court's attention as a matter of record, something that I feel may have prejudiced my client's rights to a fair trial.

"*The Court:* All right, take the jury out.

"(Thereupon the jury retired from the court room.)

"*The Court:* All right, Mr. Bivins, make your motion.

"*Mr. Bivins:* Your Honor, at this time I would like to make a motion for a mistrial for the following reason; that I believe that the minds of the jury is unduly prejudice towards Mr. Smith and Mr. Shaw due to the fact that they have been brought into court in county jail prison uniforms; that these men have clothes that they can come in here like any other human being, not come in here dressed like criminals. I think that this presumption of innocence is tarnished somewhat when the jury can sit there and see these men in striped uniforms, and I think that, based upon the fact that they may not be granted a fair and impartial hearing, that this Court should declare a mistrial.

"*The Court:* Well, let me ask you this. You are his lawyer; why didn't you bring him here in ordinary clothes? You could have had him—

"*Mr. Bivins* (interposing): He has clothes, your Honor, but I cannot go over to the county jail and make those people let him put the clothes on. He requested the right to put his clothes on.

"*The Court:* I don't know that.

"*Mr. Bivins:* I realize the court does not know that, but, nevertheless, here they sit in full view.

And I am saying that this would prejudice their rights to a fair trial. These are only human beings sitting there. A man comes into court looking like a criminal—

"*The Court* (interposing): What do you say, Mr. Prosecutor?

"*Mr. Jakeway:* Well, your Honor, when we started the case yesterday they were dressed like this and no objection was made at that time, and when the men were brought in here today the jury wasn't in here yet, and no motion was made at that time, and I would think it would be okay with me if the court would ask the jury the question, whether they would be prejudiced by the way the defendants are dressed in court. But I don't think they would be prejudiced—in fact, I feel they wouldn't be prejudiced by what the men are wearing.

"*Mr. Bivins:* As to the reason why it wasn't brought to the attention of the court this morning before the jury sat down is because the jury had an opportunity to see them yesterday. Now, we were somewhat pushed for time. Maybe it was an oversight on my part, but the chances are I didn't think of it then. But as far as what—in the prosecutor's opinion—he cannot substitute his opinion for the opinion of the jurors any more than I can. I believe that this would happen. I have no assurance that this would. Now, I would suggest that—A suggestion that the jury disregard this or ask them a question, would they be prejudiced by these men coming into court in this uniform, invariably, the answer would be no. We can't get inside their mind. The presumption of innocence, in my opinion, is tarnished the minute they walk in here. They are prisoners. The average person thinks if a person is under arrest, he has committed a crime, he is guilty of something, otherwise he wouldn't be here.

"*The Court:* I am going to deny your motion, Mr. Bivins. You have been counsel for this man for quite some time and you have known since the 26th day of August when it was going to be tried, and I

think you could have arranged to have them appear in whatever clothing you thought proper."

The people's case was presented. No witnesses were produced for the defendants. The jury was charged, retired at 2:20 o'clock p.m. and returned at 2:45 o'clock p.m. with a verdict of guilty.

Upon appeal, the Court of Appeals held that the objection to the way defendant Shaw was clothed was not timely made and that the error complained of was not so gross as to have deprived defendant of a fair trial so that his conviction was a miscarriage of justice. *People* v. *Shaw* (1967), 7 Mich App 187.

The Court of Appeals stated, referring to the trial court (p 192):

"That a court has discretion as to the criminal defendant's attire is manifest from both the *Eaddy Case* and our case of *People* v. *William L. Thomas* (1965), 1 Mich App 118."

In *Eaddy* v. *People* (1946), 115 Colo 488 (174 P2d 717), it is stated (pp 491, 492):

"We believe the mind of a prisoner would be as much disturbed and his mental faculties as much confused and embarrassed by carrying on his person such brand of incarceration, as here required, as by physical shackles, and that a prejudice against a prisoner might equally well be created thereby in the minds of the jurors. It is difficult to find any distinction, as to the humiliation involved, between requiring a prisoner to wear the words 'County Jail' branded upon his clothing and requiring him to wear them on a placard attached about his neck; either is a mockery, an indignity and a humiliation not consonant with innocence and freedom. The presumption of innocence requires the garb of innocence, and regardless of the ultimate outcome, or of the evidence awaiting presentation, every defend-

ant is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man, except as the necessary safety and decorum of the court may otherwise require."

The opinion states (p 490):

"At the trial he was brought into court wearing striped coveralls with the words 'County Jail' written in large letters across the back. Objection to this garb in behalf of defendant and request that the court direct the proper officer to return him to the court room properly attired were overruled."

The defendant was granted a new trial.

In the case of *Shultz* v. *State* (1938), 131 Fla 757 (179 So 764), the opinion is expressed that to be clothed as a convict when one has not been convicted is highly improper and that it might well be grounds for a reversal. In that case, reversal was based upon other grounds.

In the case of *Brooks* v. *Texas* (CA 5, 1967), 381 F2d 619, the defendant was brought to trial handcuffed and in his jail uniform. The Court said (p 624):

"It is inherently unfair to try a defendant for crime while garbed in his jail uniform, especially when his civilian clothing is at hand. No insinuations, indications or implications suggesting guilt should be displayed before the jury, other than admissible evidence and permissible argument."

In *Brooks,* the Court held that the defendant was denied the effective assistance of counsel primarily because of counsel's failure to prepare properly for trial and to afford the defendant the defense of insanity which was the only available defense. The judgment of the district court was reversed with directions to grant the writ of habeas corpus unless the State of Texas elected within a reasonable time to again try defendant.

As supporting the proposition that a court may exercise discretion as to the criminal defendant's attire, the Court of Appeals cited *People* v. *William L. Thomas* (1965), 1 Mich App 118. In that case the defendant was brought into court in prison uniform and in chains. This was done as a precautionary measure to prevent another escape by the defendant who had once escaped from prison. In *People* v. *Henley* (1965), 2 Mich App 54, 57, 58, also noted by the Court of Appeals, the trial judge was obliged to have the defendant forcefully clothed and brought into the court room shackled to a chair because he could not be controlled in any other way. We do not think the action taken in those cases by the trial court has any application to the facts of this case.

Under ordinary circumstances, a court has no discretion as to a criminal defendant's attire. The rule of law is stated in 21 Am Jur 2d, Criminal Law, § 239, pp 275, 276, as follows:

"Since the defendant, pending and during his trial, is still presumed innocent, he is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man, except as the necessary safety and decorum of the court may otherwise require. He is therefore entitled to wear civilian clothes rather than prison clothing at his trial. It is improper to bring him into the presence of the jury which is to try him, or the venire from which his trial jury will be drawn, clothed as a convict."

·· In the present case the issue as to how the defendant was garbed was never raised by his attorney until after the jury was chosen and the jury had twice had an opportunity to see defendant in prison garb. While defendant's attorney moved for a mistrial, he made no attempt to adduce proof that the

defendant had requested the right to wear his own clothes. The court pointed out that he had no knowledge of the truth of counsel's assertion to that effect. Finally, counsel made no response whatsoever to the court's statement: "You have been counsel for this man for quite some time and you have known since the 26th day of August when it was going to be tried, and I think you could have arranged to have them appear in whatever clothing you thought proper."

Defendant had the right to be dressed in civilian garb but there was a failure to make timely protest of the denial of such right. There is no claim in this case that the defendant was denied effective assistance of counsel.

Evidence presented by the people showed the defendant was in the driver's seat of a car with the motor running while the two codefendants were breaking into Brice's TV Shop in the city of Flint. Defendant and his companions were followed. Several witnesses saw the car. The car license was noted. Mrs. Randall testified that the defendants entered her apartment with the stolen goods. She reported the matter to the police. The defendants were apprehended. The stolen goods were identified by the store owner. Codefendant Clayton Wright identified defendant as a participant in the crime. The conviction of the defendant was the result of direct and convincing evidence. We conclude that the defendant was not deprived of a fair trial.

The Court of Appeals is affirmed.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, and BLACK, JJ., concurred with ADAMS, J.

T. M. KAVANAGH, J. (*dissenting*). LeRoy Smith, Clayton Wright and defendant Herschel M. Shaw

were jointly charged with breaking and entering in the nighttime.[1] The offense was alleged to have occurred May 15, 1963. On June 12, 1963, defendant Shaw was furnished court-appointed counsel. On October 15, 1963, codefendant Wright entered a plea of guilty to the charge.

Defendant Shaw and codefendant Smith, dressed in striped jail attire with the name "Genesee County Jail" across the back, were taken from the county jail to the courthouse at approximately 4:30 p.m. on October 15, 1963, for trial. Defendant was forced to appear in court, over protest and against his wishes, clad in filthy, ragged coveralls in full view of the jury panel.[2] A jury was drawn and sworn. The court then recessed until the following day. Defense counsel made no objection to the appearance of defendant in jail attire.

The following morning the defendants were again brought into court in the same jail attire. At the opening of court defendant Shaw's counsel requested that the jury be excused and moved that a mistrial be declared. The following colloquy took place:

"*Mr. Bivins* (Attorney for defendant Shaw): This is a motion, sir, that is something that has occurred since we have impaneled the jury that I would like to make a court record—bring it to the court's attention as a matter of record, something that I feel may have prejudiced my client's rights to a fair trial.

"*The Court:* All right, take the jury out.

"(Thereupon the jury retired from the court room.)

---

[1] CL 1948, § 750.110, since amended by PA 1964, No 133 (Stat Ann 1968 Cum Supp § 28.305).

[2] See defendant's delayed application for new trial. See, also, defendant's concise statement of facts in application for leave to appeal to the Supreme Court stating that defendant was "required to attend and impanel a jury" and "once again * * * required to attend court in his prison uniform." This allegation was not denied by the counterstatement of facts filed by the prosecutor.

"*The Court:* All right, Mr. Bivins, make your motion.

"*Mr. Bivins:* Your Honor, at this time I would like to make a motion for a mistrial for the following reason; that I believe that the minds of the jury is unduly prejudice towards Mr. Smith and Mr. Shaw due to the fact that they have been brought into court in county jail prison uniforms; that these men have clothes that they can come in here like any other human being, not come in here dressed like criminals. I think that this presumption of innocence is tarnished somewhat when the jury can sit there and see these men in striped uniforms, and I think that, based upon the fact that they may not be granted a fair and impartial hearing, that this court should declare a mistrial.

"*The Court:* Well, let me ask you this. You are his lawyer; why didn't you bring him here in ordinary clothes? You could have had him—

"*Mr. Bivins* (interposing): He has clothes, your Honor, but I cannot go over to the county jail and make those people let him put his clothes on. He requested the right to put his clothes on.

"*The Court:* I don't know that.

"*Mr. Bivins:* I realize the court does not know that, but, nevertheless, here they sit in full view. And I am saying that this would prejudice their rights to a fair trial. These are only human beings sitting there. A man comes into court looking like a criminal—

"*The Court* (interposing): What do you say, Mr. Prosecutor?

"*Mr. Jakeway* [the prosecutor]: Well, your Honor, when we started the case yesterday they were dressed like this and no objection was made at that time, and when the men were brought in here today the jury wasn't in here yet, and no motion was made at that time, and I would think it would be okay with me if the court would ask the jury the question, whether they would be prejudiced by the

way the defendants are dressed in court. But I don't think they would be prejudiced—in fact, I feel they wouldn't be prejudiced by what the men are wearing.

*"Mr. Bivins:* As to the reason why it wasn't brought to the attention of the court this morning before the jury sat down is because the jury had an opportunity to see them yesterday. Now, we were somewhat pushed for time. Maybe it was an oversight on my part, but the chances are I didn't think of it then. But as far as what—In the prosecutor's opinion—He cannot substitute his opinion for the opinion of the jurors any more than I can. I believe that this would happen. I have no assurance that this would. Now, I would suggest that—A suggestion that the jury disregard this or ask them a question, would they be prejudiced by these men coming into court in this uniform, invariably, the answer would be no. We can't get inside their mind. The presumption of innocence, in my opinion, is tarnished the minute they walk in here. They are prisoners. The average person thinks if a person is under arrest, he has committed a crime, he is guilty of something, otherwise he wouldn't be here.

*"The Court:* I am going to deny your motion, Mr. Bivins. You have been counsel for this man for quite some time and you have known since the 26th day of August when it was going to be tried, and I think you could have arranged to have them appear in whatever clothing you thought proper."

The jury found defendant guilty.

Upon appeal, the Court of Appeals held that the objection to defendant Shaw's attire was not timely made and that the error complained of was not so gross as to have deprived defendant of a fair trial resulting in a miscarriage of justice. *People* v. *Shaw* (1967), 7 Mich App 187.

The sole question for review is whether defendant was denied his constitutional right to a fair trial by an "impartial jury" when he was required to appear

before the jury at the *voir dire* and trial dressed in a jail uniform.

The issue presented for review does not involve a mere procedural error. See *People* v. *Shaw* (1967), 7 Mich App 187, 192. Const 1908, art 2, § 19,[3] guarantees to the criminal defendant a substantive right to "trial by an *impartial* jury," as do the 6th and 14th Amendments of the Federal Constitution.

Justice COOLEY, in Constitutional Limitations (8th ed), p 676, in enumerating a number of the essential elements of the right to a jury trial, said:

"Many of the incidents of a common-law trial by jury are essential elements of the right. The jury must be indifferent between the prisoner and the Commonwealth."

Constitution of the United States of America, Analysis and Interpretation (Rev Ed 1963), discussing trial by impartial jury, states (p 1001):

"The trial by jury required by the Constitution includes all the essential elements of jury trial which were recognized in this country and in England when the Constitution was adopted."

It goes on to quote the following language from *Callan* v. *Wilson* (1888), 127 US 540, 557 (8 S Ct 1301, 1307, 32 L Ed 223):

" 'The guarantee of an impartial jury to the accused in a criminal prosecution * * * secures to him the right to enjoy that mode of trial from the first moment, and in whatever court, he is put on trial for the offense charged.' " (p 1002).

Implicit in this right to an impartial jury is the presumption of innocence; and the presumption of innocence requires the garb of innocence. 21 Am

---

[3] For current provision, see Const 1963, art 1, § 20.

Jur 2d, Criminal Law, § 239, pp 275, 276; *Eaddy* v. *People* (1946), 115 Colo 488 (174 P2d 717). Nothing could more surely destroy the presumption of innocence and, of necessity, the impartiality of the jury, than to force the defendant to be tried in prison clothes. Forcing the defendant against his will to stand trial so dressed is a deprivation of the due process guaranteed by our State and Federal Constitutions.[4] See *Dennis* v. *Dees* (ED La 1968), 278 F Supp 354; *United States, ex rel. Diamond,* v. *Social Service Dept.* (ED Pa 1967), 263 F Supp 971; *Brooks* v. *Texas* (CA 5, 1967), 381 F2d 619. Such violation of a constitutional right is, in my opinion, prejudicial reversible error as a matter of law. *Atkins* v. *State* (Fla 1968), 210 So 2d 9 (dissent by Carroll, C. J.).

The duty to preserve and protect the criminal defendant's substantive right to a fair and impartial jury trial rests upon the trial judge.

As stated by this Court in *People* v. *Montague* (1888), 71 Mich 447, 452:

"It has been held from time immemorial that the trial court itself is bound to see and provide affirmatively that no injustice is done the prisoner by the improper course of a prosecutor."

In *People* v. *Evans* (1888), 72 Mich 367, 383, this Court said:

"This Court has upon numerous occasions been called upon to express its opinion upon the conduct of prosecuting officers in the prosecution of criminal cases, and has as often laid down the rule that it was their duty, *as well as the duty of the court, to see that the accused had a fair and impartial trial."* (Emphasis added.)

---

4 US Const, Am 14; Mich Const 1908, art 2, § 16.—Reporter.

In *People* v. *Sharp* (1910), 163 Mich 79, 83,
Justice STONE, writing for the Court, said:

"We deem it wholly unimportant whether the
juror was disqualified when impaneled and sworn,
or whether he became corrupted and disqualified
during the progress of the trial. In either case *the
duty of the court to act when such disqualification
is discovered is imperative.*" (Emphasis added.)

This common-law duty incumbent upon a trial
judge was legislatively expressed in PA 1927, No
175, ch 8, § 29,[5] which reads in part:

"It shall be *the duty of the judge to control all
proceedings during the trial,* and to limit the intro-
duction of evidence and the argument of counsel to
relevant and material matters, *with a view to the
expeditious and effective ascertainment of the truth
regarding the matters involved.*" (Emphasis added.)

In the instant case the trial judge breached his
common-law and statutory duty. When counsel, in
support of his motion for mistrial, claimed that
defendants had requested permission to wear their
then available civilian clothes, the trial judge merely
responded, "I don't know that." He made no attempt
to determine the truth of the assertion from the
defendants who were before him or from the officer
who had charge of the prisoners. Surely, under
the circumstances, the trial judge had a statutory
obligation to ascertain the truth of the matter.

When a breach of judicial duty goes so far that
the right to a fair trial before an impartial jury is
evidently infringed, we are bound to correct that
error on appeal. *People* v. *Montague, supra.*

It was argued below and the Court of Appeals
concluded that the matter of the defendant's attire
at trial is a procedural right, and that, like many

---

[5] CL 1948, § 768.29 (Stat Ann 1954 Rev § 28.1052).

other procedural rights, it may be bypassed and lost where there is a failure to properly assert it. *People* v. *Shaw* (1967), 7 Mich App 187, 192.

In reaching this conclusion the Court of Appeals relied heavily upon *People* v. *William L. Thomas* (1965), 1 Mich App 118, and *People* v. *Henley* (1965), 2 Mich App 54. Neither decision is applicable to the facts in this case.

Further, the Court of Appeals was in error in construing *People* v. *Schram* (1965), 1 Mich App 279, as holding that the matter of a fair and impartial jury trial was a procedural right. All that was said by the Court in *Schram* was that (p 284):

"A motion for a mistrial, just as a motion for a new trial, puts in question the fairness and impartiality of the trial. It is an appeal to the sound discretion of the court."

An examination of the cases cited in *Schram* discloses that in *Churchill* v. *Alpena Circuit Judge* (1885), 56 Mich 536, the Supreme Court granted a writ of mandamus compelling the trial judge to reverse his denial of the motion for a mistrial. There Justice Campbell, writing for the Court, said (p 540):

"The only safe rule must be to treat the jury as disqualified to settle the rights of litigants as soon as they cease to be guarded against unlawful contact with the outside world. The right to a strictly preserved protection against undue influence cannot be made to depend on discretion."

In *In re Ascher* (1902), 130 Mich 540, 551 (57 LRA 806), this Court said:

"It is a right of which the accused cannot be deprived to have his case tried by an impartial jury."

In *Cooper* v. *Carr* (1910), 161 Mich 405, this Court concluded that defendant did not have the benefit of such a jury trial as she was entitled to have under the law, that defendant was entitled—as a matter of right—to have the same set aside, and that the trial judge, on the facts found by him upon the motion for new trial, erred in denying the motion.

In *People* v. *Schram, supra,* the Court of Appeals said (pp 285, 286):

"In the instant case the court examined the jurors and the prosecutor in the presence of the defense attorneys. The jurors stated their conversation had to do with the question of how long they would be trying the case and both jurors denied that it would prejudice them for either the defense or the prosecution. The court was satisfied from their answers that they could give the defendants a fair and impartial trial. * * *

"There is nothing in the record to show an abuse of discretion in denying the motion for a mistrial."

In the instant case no such procedure was followed by the trial judge. He made no attempt to find out the fact as to whether or not the allegations in the motion for mistrial were true and made no finding as to whether defendant had been deprived of a fair, impartial trial. We conclude, as was implicit in *Schram, supra,* that where the trial judge abuses his discretion we must reverse.

The Court of Appeals held that the reason the defendant should be refused a new trial is that "defense counsel failed to timely assert the right of defendant to appear before the jury in his own clothing."

Viewing the right to an impartial jury as a substantive right, the defendant cannot be stripped of or lose such right by counsel's failure to timely object or assert defendant's right. See *Henry* v. *Mississippi* (1964), 379 US 443 (85 S Ct 564, 13

L Ed 2d 408); *People* v. *Ignofo* (1946), 315 Mich 626; *People* v. *Kelsey* (1942), 303 Mich 715; *People* v. *Nelson* (1924), 227 Mich 552; *People* v. *Murray* (1888), 72 Mich 10; GCR 1963, No 529.1.

See, also, as to the timeliness of the objection, *Harrington* v. *Probate Judge* (1908), 153 Mich 660, 663, dealing with remarks made to a jury while at dinner, where it was contended that certain misconduct occurred on the 11th of June, when the jurors were making a view of a proposed drain. The verdict was filed on the 13th of June. The objections were made on the 14th. The contention was that counsel should have objected to the irregularities at the time they occurred. Justice CARPENTER, writing for the Court, said:

"But it may not be inferred that he [counsel] did anything which indicated his approval or his intent to waive objections."

The Court concluded that counsel had not waived the right to make objections and vacated the verdict of the jury.

In the instant case, we likewise conclude that timely objection was made.

Reversible error was committed by the trial judge who, disregarding his common-law and statutory obligations, did not determine the truth of the facts upon which counsel's motion for mistrial was based. His failure to act was an abuse of discretion, depriving defendant of a fair and impartial jury trial guaranteed by the Constitution of the United States and the Constitution of the State of Michigan.

The judgment of the Court of Appeals affirming the judgment of the conviction of defendant should be reversed and a new trial granted.

T. G. KAVANAGH, J., took no part in the decision of this case.