*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 16, 2023

Plaintiff-Appellant,

v

No. 358352
Ingham Circuit Court
LC No. 10-000631-FC

JASON ALAN BROWN,

Defendant-Appellee.

Before: GLEICHER, C.J., AND BOONSTRA AND CAMERON, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] a 2021 opinion and order granting defendant's motion for relief from judgment. The prosecution argues that the trial court relied on nonexistent facts, improperly assessed the evidence and legal standards, and abused its discretion by granting the motion. We agree and, therefore, reverse and remand for entry of an order denying the motion for relief from judgment.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

In 2011, a jury convicted defendant of first-degree murder, MCL 750.316; armed robbery, MCL 750.529; and conspiracy to commit armed robbery, MCL 750.157a. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to life imprisonment for first-degree murder and to two terms of 171 months to 25 years' imprisonment for armed robbery and conspiracy to commit armed robbery. Defendant appealed and this Court affirmed the convictions. *People v Brown*, unpublished per curiam opinion of the Court of Appeals, issued August 16, 2012 (Docket No. 305153), p 1.

---

[1] See *People v Brown*, unpublished order of the Court of Appeals, entered February 9, 2022 (Docket No. 358352).

This Court set forth the following facts in the 2012 opinion:

> This case arises out of the murder and armed robbery of the victim in Lansing, Michigan. Defendant arrived in Lansing and proceeded to spend a significant amount of money purchasing crack cocaine. As a result of this behavior, defendant needed money. Defendant was aware that the victim had recently cashed a large check because defendant accompanied the victim to the party store to cash the check. Defendant and his acquaintance, Jason Morse, decided to rob the victim and split the money. While the events surrounding the murder are disputed, defendant eventually confessed to the police that, according to Morse, defendant strangled the victim to death.[2]
>
> After the murder, defendant met with another acquaintance, Christopher Stipanuk, and they continued to use crack cocaine throughout the day. Later that evening, Stipanuk and defendant planned to meet Morse in an alley to exchange a car, so defendant pulled into the alley to await Morse's arrival. While waiting, defendant began to pound the steering wheel and behave erratically. Defendant then admitted to Stipanuk that he and Morse intended to rob the victim[] [and] split the money, and the victim ended up dead.
>
> While defendant and Stipanuk were waiting in the alley, the police received a report of a suspicious vehicle. The police approached defendant's car and Stipanuk immediately informed the police that he [i.e., Stipanuk] had a warrant out for his arrest. Stipanuk then relayed defendant's admission to the police. While one officer was talking with Stipanuk, another officer noticed drug paraphernalia in the car, and conducted a search of the vehicle. The officer questioned defendant about his drug use but when he was informed of Stipanuk's statements, the officer placed defendant in the back of the patrol car.
>
> Defendant was then transported to the police precinct. An interrogating officer questioned defendant three times regarding the murder, giving defendant his *Miranda*[3] warnings only before defendant's last statement. [*Brown*, unpub op at 1-2 (first footnote added).]

Years later, defendant moved for public funds to pay for a forensic psychological examination by psychologist Jeffrey Wendt, Ph.D. In defendant's view, an examination was necessary to evaluate his mental state at the time of the *Miranda* waiver. The trial court granted the motion and an evaluation and a report were completed. Defendant later moved for relief from judgment, attaching Dr. Wendt's report.

---

[2] In a third statement to police, defendant said that Morse told him that he (defendant) had killed the victim. An autopsy report showed that the victim died from strangulation.

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

In his report, Dr. Wendt stated that defendant "is currently functioning in the high average range, at an intellectual level higher than 91% of same-aged peers." He concluded that, when properly medicated, defendant "presents as an intelligent man with a strength in his ability to attend to information presented verbally, manipulate that information in short-term immediate memory, and then formulate a response." However, Dr. Wendt opined that these abilities were "neutralized by acute cocaine withdrawal and sleep deprivation" when defendant made his post-*Miranda* statement. According to Dr. Wendt, defendant told him that he had been having visual hallucinations and paranoid delusions at the time of the statement. Dr. Wendt stated that defendant had been experiencing acute pain at the time as a result of an injured ankle and was taking opioids to deal with the pain. Dr. Wendt also credited Stipanuk's preliminary-examination testimony that defendant had what Stipanuk perceived as a "nervous breakdown" while he was sitting in a truck with Stipanuk following the murder. Dr. Wendt concluded that the combination of the circumstances prevented defendant "from making a knowing and intelligent waiver of [*Miranda*] rights." He also opined that there were "significant concerns regarding the trustworthiness of the content of [defendant's] statements" made to the investigating detective.

The trial court conducted a hearing on the motion for relief from judgment. The parties argued over the prejudicial nature of defendant's post-*Miranda* statements, some of which had been played for the jury. During this discussion, the trial court interjected with the following commentary:

> I can tell you that I've had a number of law clerks look at this case because it's probably . . . one of the few cases that has never set well with me, and I have to follow my gut, and that's not in the law, . . . but we've been looking through this file for quite a long time. . . . I've had four or five law clerks, I've had a number of students look at this, number of attorneys have chimed in on [it], and we all missed this until my current law clerk was looking at this so that we were prepared for today . . . and one thing that really sticks in my mind, and that was, first of all, did we scrub the third confession . . . enough, and I always thought maybe I should have scrubbed it more. . . . I don't know if either one of you have seen this, but [defendant] is wearing street clothes for the first two. He's not been Mirandized. Prior to being Mirandized, he then is put in jail garb, so given his confused state of mind, given that he is now dressed in jail garb, and he's not yet confessed or been read his rights, to me that adds a whole new psychological dimension . . . . I think that brings a whole new layer to undue influence to not being freely, voluntarily, knowingly making these statement . . . .

The trial court also stated that it was inequitable that Morse got a plea deal and added, "[M]y gut says [defendant] gets a new damn trial." It said, "[T]his can go up higher, but it is my intention, unless I hear something today, that this case be vacated and we go into a new trial." The trial court opined that it should have ruled at trial that the third, post-*Miranda*, statement was inadmissible. It granted defendant's motion for relief from judgment in a written order. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's decision regarding a motion for relief from judgment. *People v Clark*, 274 Mich App 248, 251; 732 NW2d 605 (2007). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014) (citation omitted). Conclusions of law and findings of fact made by the trial court in support of its decision are reviewed, respectively, de novo and for clear error. See *Clark*, 274 Mich App at 251. "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993).

## III. FOUNDATIONAL LAW

Criminal defendants in Michigan are permitted to seek postappeal relief through the procedures described by MCR 6.500 *et seq.*

Accordingly, a defendant bears the burden of establishing entitlement to the relief requested in their motion for relief from judgment. MCR 6.508(D). A trial court may not grant relief from judgment if a defendant:

> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision; for purposes of this provision, a court is not precluded from considering previously decided claims in the context of a new claim for relief, such as in determining whether new evidence would make a different result probable on retrial, or if the previously decided claims, when considered together with the new claim for relief, create a significant possibility of actual innocence;

> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and

> (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,

> (*i*) in a conviction following a trial,

> (A) but for the alleged error, the defendant would have had a reasonably likely chance of acquittal . . . .

\* \* \*

-4-

> (*iii*) in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case . . . .

"The court may waive the 'good cause' requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime." MCR 6.508(D). Ultimately, to obtain relief from judgment on the basis of a claim not previously decided, a defendant must show: (1) actual prejudice, and (2) either good cause or a significant possibility of innocence.

One way a defendant establishes the good cause prong is by showing ineffective assistance of counsel. *People v Reed*, 449 Mich 375, 378; 535 NW2d 496 (1995). "To establish ineffective assistance of counsel, defendant must first show that (1) his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Uphaus*, 278 Mich App 174, 185; 748 NW2d 899 (2008). "[T]he test for ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel." *Id*. at 186.

Defendant's motion for relief from judgment asserted many reasons why defendant believed he was entitled to a new trial. The trial court accepted some of these arguments, and rejected others. Additionally, the trial court went beyond defendant's arguments and found its own reasons to grant defendant a new trial. As explained below, the trial court abused its discretion in granting the motion for relief from judgment.

## IV.  TRIAL COURT'S ARGUMENTS

### A.  SPOLIATION

The prosecution first challenges the trial court's conclusion that defendant was entitled to relief because law enforcement mishandled evidence. In his motion for relief from judgment, defendant argued that, during the initial investigation, law enforcement prematurely released the scene of the murder to the victim's family. According to defendant, this was an effort by law enforcement to intentionally destroy potentially exculpatory evidence. The trial court concluded that this argument had merit due to a "colossal failure in handling evidence" by the Ingham County Sheriff's Office. It noted that over the course of ten years, the Sheriff's Office had been accused of destroying or mishandling evidence. However, defendant did not raise this argument, and made no claims against the Sheriff's Office. Defendant's allegations about spoliation related to actions by the *Lansing Police Department* because that is the agency that investigated this case. The trial court erroneously attributed to the Lansing Police Department unrelated allegations against the Sheriff's Office. Thus, the trial court's findings as to this issue are clearly erroneous, and the trial court abused its discretion in granting the motion for relief from judgment on the basis of inaccurate facts that were also not argued by defendant.

### B.  JAIL UNIFORM

This issue concerns defendant's third statement to police. Although defendant had made two previous statements, he had not been informed of his *Miranda* warnings, so those statements were suppressed. Before making his third statement, he was given his *Miranda* warnings and was

wearing a jail uniform during this video-taped statement. Without any argument from defendant, the trial court concluded that defendant's confession was involuntary because defendant's wearing a jail uniform during his post-*Miranda* statement "had a coercive effect on [his] understanding and decision[-]making regarding the waiver of his rights." The prosecution argues defendant's change of clothes was not new evidence, and therefore cannot serve as grounds to grant relief from judgment. We agree that the jail uniform was not new evidence under MCR 6.508(D)(2), nor is there any indication in the record that defendant's clothing had any effect on defendant's understanding of his rights. Also problematic is that defendant never raised this issue and the record contains neither evidence nor argument that would support good cause for failing to raise it. Therefore, defendant did not meet his burden establishing grounds for relief.

Even so, the trial court apparently thought this issue was significant enough to raise this issue "of its own accord in the interests of justice and fairness." Criminal defendants in Michigan may be deprived of due process if they are compelled to be tried in jail attire. *People v Shaw*, 381 Mich 467, 474; 164 NW2d 7 (1969). Drawing a comparison to *Shaw*, the trial court concluded that in this case, "[t]he jury was no longer impartial after footage of [d]efendant in the jail outfit was viewed as they saw him dressed as a convict and not as someone presumed to be innocent."

But the trial court's reliance on *Shaw* was misplaced. *Shaw* held that criminal defendants may be deprived of due process if, *during trial*, they are forced to wear a jail uniform in the presence of the jury. *Shaw*, 381 Mich at 474. In this case, there is no evidence that defendant was dressed in a jail uniform during his trial. By itself, the fact that defendant was wearing jail garb during his police interview does not demonstrate a deprivation of due process. Moreover, the video footage of defendant's third statement was introduced at trial and available to defendant in the first appeal, yet defendant never raised his attire as an issue in his prior appeal. Thus, this was not new evidence, and it was therefore inappropriate for the trial court to consider it in the context of defendant's motion for relief from judgment. Accordingly, the trial court abused its discretion in granting the motion for relief from judgment as to this issue.

## V. DEFENDANT'S ARGUMENTS

The trial court also granted the motion for relief from judgment on the basis of arguments actually presented in defendant's motion. While we consider each argument, we conclude that defendant failed to present sufficient evidence warranting relief.

## A. PSYCHOLOGICAL EVALUATION

Defendant argued that he did not voluntarily waive his *Miranda* rights. The prosecution asserts this argument was raised and rejected in defendant's earlier appeal, and that Dr. Wendt's opinions in the psychological evaluation do not change this Court's earlier conclusions regarding the voluntariness of the statement at issue.

When deciding a motion for relief from judgment, one of the first questions a trial court should ask is whether the defendant "alleges grounds for relief which were decided against the defendant in a prior appeal." MCR 6.508(D)(2). In defendant's earlier appeal, he "contend[ed] that his confession and waiver of his *Miranda* rights were involuntary and the admission of his confession at trial violated his Due Process rights and Fifth Amendment right against self-

-6-

incrimination." *Brown*, unpub op at 5. Defendant specifically argued "that his confession and the waiver of his *Miranda* rights w[ere] the result of police coercion, sleep deprivation, drug use, and a preexisting physical injury, which resulted in an involuntary confession." *Id*. Using a totality-of-the-circumstances test, we concluded that "the trial court did not err in finding that defendant's third statement to the police was voluntary and admissible." *Id*. at 6. We further stated that there was "no indication that defendant's alleged drug use interfered with his ability to assert his free will." *Id*.

In his motion for relief from judgment, defendant argued he was entitled to relief from judgment because he was not provided a psychological evaluation regarding his mental state at the time he made his third statement to the police. Defendant claims that the waiver of his *Miranda* rights was ineffective because, when he made that statement, he was sleep-deprived and under the influence of substances. Defendant's supplemental brief in support of his motion for relief from judgment underscored Dr. Wendt's evaluation as evidence that his confession and waiver of his *Miranda* rights were involuntary. The appellate record demonstrates that defendant's present argument regarding the voluntariness of his post-*Miranda* statement was raised and decided against defendant in an earlier appeal.

We note, however, that Dr. Wendt's report was not part of the record in the earlier appeal. As such, the next question is whether this report is "new evidence" under MCR 6.508(D)(2). This analysis generally requires a court to consider whether the defendant demonstrated that: "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citation omitted). But, in this case we need not analyze these factors because the burden was on *defendant* to demonstrate Dr. Wendt's report satisfied the newly-discovered evidence standard under MCR 6.508(D)(2). Defendant's supplemental brief, which was filed after Dr. Wendt issued his report, made no such argument.

The trial court nevertheless analyzed the issue, and engaged in extensive discussion whether, under the circumstances surrounding his third statement to the police, defendant was capable of waiving his rights under *Miranda*. The trial court concluded that, given defendant's state of mind at the time he made his statement to the police, he could not freely waive his rights. However, the trial court's analysis fails to recognize that this Court had already decided this same issue in defendant's earlier appeal. The sole question before the trial court should have been whether Dr. Wendt's report was "new evidence" under MCR 6.508(D)(2). Because defendant failed to argue the factors for newly-discovered evidence, he could not meet his burden of establishing that he was entitled to relief from judgment, and the trial court should have rejected defendant's arguments. As such, the trial court abused its discretion in granting relief from judgment as to this issue.

## B. ALLEGED *SEIBERT* VIOLATION

Defendant next argues appellate counsel was ineffective for failing to challenge the admissibility of defendant's third statement under *Missouri v Seibert*, 542 US 600; 124 S Ct 2601; 159 L Ed 2d 643 (2004). In *Seibert*, the United States Supreme Court struck down a police practice

that involved first obtaining an un-Mirandized, inadmissible confession, then advising a suspect of their *Miranda* warnings to obtain a second, admissible confession—colloquially, courts call this an impermissible "two-step" interrogation process. *Id*. at 610-614. In evaluating the voluntariness of a subsequent confession, *Seibert* developed a multi-factor voluntariness test. *Id*. at 615. These factors include:

> The completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first. [*Id*.]

At the hearing on defendant's motion for relief from judgment, the trial court recognized the potential *Seibert* issue, noting defendant's third statement was given after two unwarned statements to police. The trial court went on to state that it "[did not] know that *Seibert* was brought to [the Court of Appeals'] attention." In the order entered after the hearing, the trial court granted defendant's motion, in part, because "*Seibert*, factors two, four, and five inform this Court that the *Miranda* warnings [given before the third statement] were ineffective."

The trial court's findings are incorrect. Indeed, this Court engaged in extensive analysis of the potential *Seibert* issue. *Brown*, unpub op at 7-8. We concluded that the type of "two-step interrogation process" that occurred in *Seibert* "did not occur in this case" and, therefore, defendant's waiver was not involuntary. *Id*. at 7. In evaluating defendant's motion for relief from judgment, the trial court should have recognized that the *Seibert* issue had been raised in the earlier appeal and the trial court should not have granted relief on that basis.

## C. MISTRIAL

Defendant also argued appellate counsel was ineffective for failing to raise potential mistrial issues in the earlier appeal. His motion for relief from judgment was based, in part, on the investigating detective's testimony, which included facts that had been suppressed by the trial court. Although the detective was able to correct his testimony, defendant argued that was not enough, and a mistrial should have been declared, or in the alternative, an adequate curative instruction should have been given.

Again, when considering motions for relief from judgment, courts should generally reject claims that either were, or could have been, raised in an earlier proceeding. MCR 6.508(D)(3). However, courts may deviate from this standard for good cause, MCR 6.508(D)(3)(a), and a defendant can demonstrate good cause if he can show that appellate counsel was ineffective. *Reed*, 449 Mich at 378. In this case, defendant claimed his appellate counsel was ineffective for failing to challenge the mistrial issue. To succeed, defendant must demonstrate his appellate counsel was ineffective.

None of defendant's arguments in connection with his motion for relief from judgment— his original motion, his supplemental brief in support of the motion, and his statements at oral argument—offered any explanation of the "objective standard of reasonableness" necessary to determining whether counsel was effective. Likewise, he failed to analyze appellate counsel's

performance under this objective standard. In the absence of such explanation, a defendant's motion for relief from judgment must fail. MCR 6.508(D).

Even so, the trial court in this case provided extensive discussion explaining *its* belief that defendant was deprived of effective assistance of appellate counsel regarding this issue. But, the burden of proof was not on the trial court, it was on defendant. Thus, it was an abuse of discretion for the trial court to grant the motion for relief from judgment without adequate argument by defendant.

## D.  DIRECT APPEAL ERRORS

Defendant's motion for relief from judgment further claimed that: (1) prior appellate counsel was ineffective for failing to move for a *Ginther*[4] hearing; (2) prior appellate counsel was ineffective for failing to file a reply brief in the earlier appeal; and (3) prior appellate counsel was ineffective for failing to timely file its brief on appeal, resulting in a waiver of oral argument. The trial court erred when it partially relied on these arguments in granting the motion for relief from judgment.

A defendant must show both good cause *and* actual prejudice if he could have raised an issue in an earlier appeal but did not. MCR 6.508(D)(3). Defendant claimed these prongs were satisfied because appellate counsel was ineffective. In this case, we need not resolve whether these alleged failings by appellate counsel amounted to ineffective assistance of counsel because defendant failed to establish actual prejudice. Actual prejudice means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." MCR 6.508(D)(3)(b)(*i*)(A). Defendant does not explain in his motion for relief from judgment how he would have had a reasonable chance of acquittal had prior appellate counsel taken the steps defendant alleges they failed to take. Although appellate counsel's actions caused defendant to lose out on some opportunities for argument, it does not follow that defendant was completely deprived of presenting his case. Indeed, appellate counsel filed a brief on appeal and defendant filed a Standard 4 brief. The trial court did not recognize defendant's failure to present a prejudice argument, did not address the actual prejudice prong in its ruling, and therefore abused its discretion in granting defendant's motion for a new trial.

## E.  ACTUAL INNOCENCE

Finally, defendant's supplemental brief in support of his motion alleged that relief was warranted because there was a reasonable possibility he was actually innocent of the crimes. "To satisfy the 'actual innocence' standard, a defendant must show that it is more likely than not that no reasonable juror would have found the defendant guilty beyond a reasonable doubt." *People v Swain*, 288 Mich App 609, 638; 794 NW2d 92 (2010) (quotation marks, citation, and alterations omitted). While a defendant need not show with "absolute certainty" their guilt or innocence, this is a "demanding standard and permits review only in 'extraordinary' cases." *Id*. (citation omitted).

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant's assertion of actual innocence was predicated on his contention that he "has no true recollection of committing the act and only provided a story of what some had told him happened." He emphasized Dr. Wendt's opinion that his "condition rendered him vulnerable to external influence and he stated that he based much of his account on what he had been told rather than what he recollected." Defendant also noted Dr. Wendt's belief that others' accounts of what defendant told them "should be treated very skeptically."

The trial court analyzed this argument, stating:

> There was no other evidence presented, outside of Defendant's statements that would prove guilt in a substantial manner. Physical evidence that [d]efendant was at the scene of the homicide was nonexistent. The only other evidence of consequence was testimony of the detective, which should have been suppressed under the fruit of the poisonous tree doctrine had the incriminating statements been properly suppressed. Testimonies from the other witnesses were from parties who had motive to assign blame to [d]efendant to avoid criminal liability themselves.

Again, the burden of proof was on defendant in this case. MCR 6.508(D). Defendant's assertion of actual innocence was premised on the credibility of his statements, and the testimonies of other witnesses. Thus, the trial court's analysis should have focused on these two arguments, and its sua sponte rationale in support of defendant's actual innocence claim is irrelevant.

The trial court disregarded defendant's assertions about his own statements, noting that this was the only evidence "that would prove guilt in a substantial manner." Therefore, the only other argument the trial court could consider in granting defendant's motion for relief from judgment was the testimony of the other witnesses at trial. The trial court noted that the witnesses' testimonies were not reliable because they "had motive to assign blame to [d]efendant to avoid criminal liability themselves." Regardless, the trial court completely failed to account for the jury's role in the proceedings. "[I]t is the role of the jury . . . to determine the weight of the evidence or the credibility of witnesses." *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012) (quotation marks and citation omitted). Standing alone, the fact that witnesses may have had motive to lie does not give rise to the conclusion that defendant was actually innocent of the offense—this is especially true given that the jury is charged with assessing a witness's credibility. *Id.* We conclude defendant failed to overcome the "demanding standard" showing actual innocence and it was an abuse of discretion to grant relief on this basis.

Reversed and remanded for entry of an order denying the motion for relief from judgment. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron

-10-