# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 16, 2018

Plaintiff-Appellee,

v

No. 334628
Wayne Circuit Court
LC No. 16-003932-01-FC

ADAIRE CARVANE EVANS,

Defendant-Appellant.

Before: JANSEN, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, armed robbery, MCL 750.529, possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f, carrying a concealed weapon (CCW), MCL 750.227, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and intentional discharge of a firearm from a motor vehicle causing injury, MCL 750.234a. Defendant was sentenced, as a third habitual offender, MCL 769.11, to 85 months to 20 years' imprisonment for the AWIGBH conviction, 216 months to 30 years' imprisonment for the armed robbery conviction, 43 months to 10 years' imprisonment for the felon-in-possession conviction, 43 months to 10 years' imprisonment for the CCW conviction, two years' imprisonment for the felony-firearm conviction, and 129 months to 30 years' imprisonment for the intentional discharge of a firearm from a motor vehicle causing injury conviction. We affirm.

This appeal arises out of the armed robbery of Tywone Williams inside his family home in Detroit, Michigan, by defendant and another unnamed individual. After the robbery, defendant and the other individual fled in a gold Oldsmobile driven by a third individual. Williams, along with his friend Izella Fleming, chased after the gold Oldsmobile in a vehicle driven by Fleming's cousin, James Barnes. Barnes eventually caught up to the gold Oldsmobile, first pulling up behind it, then attempting to try to pull in front of it so that it could not go anywhere. However, as Barnes pulled up to the passenger side of the gold Oldsmobile, gunshots rang out, and Barnes saw a flash from a firearm coming from the front of the vehicle. Barnes sustained a non-fatal gunshot wound to the chin area.

Defendant raises several issues in his brief on appeal and in his Standard 4 brief on appeal. Although we do not find any to be persuasive, each is addressed in turn.

-1-

# I. SUFFICIENCY OF THE EVIDENCE

In his brief on appeal, defendant argues that the evidence was insufficient to support all of his convictions. We disagree.

Challenges to the sufficiency of the evidence are reviewed de novo. *People v Murphy*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 331620); slip op at 2. "[A]ll conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *Id.* at 2, quoting *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016); *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). This Court must defer to the trier of fact's determination regarding what inferences may be drawn from the evidence presented, as well as "the weight to be accorded those inferences." *Murphy*, ___ Mich App at ___; slip op at 2 (citation omitted). Similarly, this Court may not disturb the trier of fact's credibility determinations. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

Defendant first challenges the sufficiency of the evidence supporting his firearm-related convictions: AWIGBH, felon-in-possession, CCW, felony-firearm, and discharging a firearm from a motor vehicle causing injury. Defendant argues that where all five convictions required him to have been in possession of, or have discharged, a firearm, the prosecution failed to present sufficient evidence from which a rational jury could have found beyond a reasonable doubt that defendant was ever in possession of a firearm.

Defendant correctly states that his CCW, felon-in-possession, and felony-firearm convictions all required him to be in possession of a firearm. See *People v Davenport*, 89 Mich App 678, 682; 282 NW2d 179 (1979) (a required element of CCW is that the defendant carried a weapon); *People v Bass*, 317 Mich App 241, 268; 893 NW2d 140 (2016) (a required element of felon-in-possession is that the defendant, who was previously convicted of a felony, possessed a firearm); and *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000) (a required element of felony-firearm is that the defendant was in possession of a firearm). Similarly, defendant's discharging a firearm from a motor vehicle causing injury convictions required defendant to have discharged a firearm at Barnes, and defendant's AWIGBH conviction required defendant to have attempted to harm Barnes, or to have forcefully or violently threatened to do corporal harm to Barnes. See *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997) (an element of AWIGBH is that the defendant "attempt[ed] or threat[ened] with force or violence to do corporal harm to another[,]"), and MCL 750.234a(1), which specifically requires that an individual intentionally discharge a firearm from a motor vehicle.

Defendant's argument falls short, however, where he contends that because there was no testimony unequivocally linking him to a firearm, there was insufficient evidence to sustain his firearm-related convictions. Defendant fails to recognize that "[c]ircumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005) (citation omitted). Both Barnes and Fleming testified that when defendant left Williams's home, he got into the front passenger seat of the gold Oldsmobile. Barnes further testified that when he pulled up alongside the passenger side of the gold Oldsmobile, he heard gunshots and saw a flash from a firearm coming from the front of the car. When the foregoing evidence is viewed in a

light most favorable to the prosecution, a rational jury could infer that while sitting in the front passenger seat of the gold Oldsmobile, defendant possessed a firearm, which he used to shoot at Barnes. Accordingly, sufficient circumstantial evidence supports defendant's AWIGBH, felon-in-possession, CCW, felony-firearm, and discharging a firearm from a motor vehicle causing injury convictions.

Defendant next argues that the evidence presented by the prosecution was insufficient to support his armed robbery conviction. Specifically, defendant argues that his mere presence at the scene does not amount to aiding-and-abetting. Williams's testimony was clear that defendant was not the individual who pulled a gun on him, or took his wallet and cellular telephone. However, MCL 767.39 provides that an individual who assists or encourages a principal in the commission of a crime will also incur criminal liability. *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006). A conviction under a theory of aiding-and-abetting requires the prosecution to establish:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. [*Id*. (alteration marks, quotation marks, and citation omitted).]

A defendant can assist the perpetrator of the crime using words that are intended to encourage, support, or incite the commission of the crime. *People v Palmer*, 392 Mich 370, 378; 220 NW2d 393 (1974). The extent of the aid, advice, or encouragement is immaterial: what is important is the effect of the aid in inducing the crime. *Id*. Further, with respect to a defendant's intent to aid a principal, the defendant's mental state may be "inferred from all the facts and circumstances[ ]" surrounding the crime. *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999) (citation omitted). However, regardless of whether a defendant had knowledge that a crime would be committed, without the requisite intent, mere presence is insufficient to sustain a conviction under an aiding-and-abetting theory. *People v Wilson*, 196 Mich App 604, 614; 493 NW2d 471 (1992).

When viewed in a light most favorable to the prosecution, the evidence presented at trial is sufficient to establish that defendant "performed acts or gave encouragement that assisted the [principal in the] commission of the crime[.]" *Robinson*, 475 Mich at 6 (citations and quotation marks omitted). Fleming testified that defendant drove himself and the unknown assailant to William's home. The record evidence further confirmed that defendant used his relationship as a family friend of Williams to gain entry to the home, and after he gained access to the home, engaged Williams in a conversation about his Christmas shopping, presumably to distract Williams before the unknown assailant pulled a gun on him. Further, while Williams was lying on the floor after having a firearm pointed in his face, defendant told him to "be cool, be cool," and asked where "Mike," Williams's cousin, was. Notably, defendant did not attempt to stop the unknown assailant from pulling a gun on Williams or taking his money and cellular phone, and ran out of the house with the assailant and got in the get-away vehicle. When the foregoing is viewed in a light most favorable to the prosecution, the evidence presented at trial was sufficient to establish that defendant was not "merely present" at the scene of the armed robbery, but rather

aided-and-abetted the principal in the commission of the crime. Accordingly, sufficient evidence supports defendant's armed robbery conviction.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief on appeal, defendant raises several claims, asserting that he was denied the effective assistance of counsel. We disagree.

Defendant did not move for a new trial, or request a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), in the trial court. *Solloway*, 316 Mich App at 188. Accordingly, no factual record has been created on which this Court may evaluate defendant's claim. *Id*.

Generally, "[w]hether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *Solloway*, 316 Mich App at 187 (citation omitted). "[A] trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo." *Id*. at 188. However, where no factual record has been created in regard to a defendant's claim of ineffective assistance of counsel, as is the case here, "this Court's review is limited to mistakes apparent on the lower court record." *Id*.

We presume that a defendant received the effective assistance of counsel, and criminal defendants have a heavy burden of proving otherwise. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). When claiming ineffective assistance of counsel, it is the defendant's burden to prove "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial could have been different." *Solloway*, 316 Mich App at 188, citing *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), in turn citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "[D]efendant has the burden of establishing the factual predicate for his claim[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant first argues that defense counsel was ineffective by failing to investigate his case, which precluded defendant from establishing a defense. Defendant specifically claims that defense counsel failed to interview witnesses, failed to subpoena Rosetta Jarrett, Williams's aunt who was in the house at the time of the robbery, and failed to obtain a copy of a surveillance video from a party store purportedly showing defendant was not a passenger in the gold Oldsmobile. Defendant also argues that defense counsel failed to adequately cross-examine witnesses at trial.

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy," and this Court does not second-guess matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008) (citation omitted). Further, failing to call a witness only constitutes ineffective assistance of counsel when it deprives the defendant of a substantial defense. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (quotation marks and citation omitted). Additionally, simply

because a trial strategy was unsuccessful does not mean it amounts to ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412-413; 760 NW2d 882 (2008).

Defendant fails to support his various claims, and has not overcome the strong presumption that defense counsel's representation resulted from sound trial strategy. For example, defendant mentions a surveillance video from a party store, but does not provide a copy of such a video, or explain any of the circumstances surrounding the video, i.e., date of the video, timeframe, location of the party store, or the store's proximity to the robbery. Additionally, defendant names only Jarrett as a possible witness that defense counsel declined to interview and subpoena. Defendant argues Jarrett would testify that he was merely present at the robbery, but fails to support this claim with an affidavit from Jarrett indicating what her actual testimony would be. Finally, although it may not have been to defendant's personal satisfaction, our review of the record confirms that defense counsel did thoroughly and competently cross-examine all witnesses at trial.[1] Accordingly, defendant has failed to demonstrate that he was deprived of a substantial defense because of defense counsel's representation.

Second, defendant argues that defense counsel had a conflict of interest in this case which was highly prejudicial and affected defense counsel's representation. Specifically, defense counsel knew one of the complaining witnesses. Defendant points out that although this conflict was disclosed to the trial court on the record, it was not properly explained to defendant, and therefore, defendant could not have made an informed waiver.

A defendant's right to counsel includes the right to have an attorney not "burdened by an actual conflict of interest." *Strickland*, 466 US at 692. It is the defendant's responsibility to demonstrate that an actual conflict of interest negatively affected defense counsel's performance. *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998). Specifically, a defendant must show "that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Id*. at 557 (citation and quotation marks omitted). An actual conflict of interest that has adversely affected defense counsel's performance is presumed prejudicial. *Id*. at 556-557.

To show he is entitled to a new trial, defendant must first establish the existence of an actual conflict. *Smith*, 456 Mich at 556-557. Rule 1.7 of the Michigan Rules of Professional Conduct (MRPC) provides that:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after consultation.

---

[1] Specifically, we observe that defense counsel competently and thoroughly questioned Barnes during cross-examination.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interest, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved. [MRPC 1.7(a), (b).]

In this case, defense counsel addressed his conflict on the record, stating, "I just wanted to disclose to the Court [that] I just found out that I know one of the complaining witnesses. I'm duty bound to disclose that to you and my client as well." Defense counsel did not elaborate, and the trial court did not press defense counsel regarding the nature of the conflict. Defendant continued to allow defense counsel, who was retained, to represent him at trial. Defendant does not specifically elaborate on the nature of the alleged conflict in this Court, neglecting to explain the nature of the relationship, the extent of the relationship, or even which complaining witness defense counsel knew. Without this information, any determination that defense counsel's representation of defendant was adversely affected because he knew a complaining witness is speculative. A conflict of interest cannot be presumed or implied, *People v Lafay*, 182 Mich App 528, 530; 452 NW2d 852 (1990), and "[t]o warrant reversal, the prejudice shown must be actual, not merely speculative." *People v Fowlkes*, 130 Mich App 828, 836; 345 NW2d 629 (1983). Defendant has failed to make any showing that defense counsel simply knowing a complaining witness created an actual conflict of interest. Further, regardless of whether an actual conflict existed, defendant further fails to demonstrate in what way defense counsel's performance was impacted, or how the conflict directly lessened his defense.

Finally, defendant argues that even if defense counsel's errors, on their own, were not prejudicial, the cumulative effect of these errors "had a devastating impact on any chance of a successful defense." While "[i]t is true that the cumulative effect of several errors can constitute sufficient prejudice to warrant [relief] where the prejudice of any one error would not[,]" *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002), "only actual errors are aggregated to determine their cumulative effect." *People v Bahoda*, 448 Mich 261, 293 n 64; 531 NW2d 659 (1995). Additionally, any errors must have been "seriously prejudicial[.]" *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). As discussed, defendant has not demonstrated that defense counsel provided deficient representation. Because there are no errors to aggregate, the cumulative error doctrine is inapplicable. *Bahoda*, 448 Mich at 293 n 64.

### III. PHOTOGRAPHIC IDENTIFICATION PROCEDURE

Next, in his Standard 4 brief, defendant argues the photographic identification procedure used by police, where Williams was only shown one photo of defendant, instead of a photo array or a "six-pack," was impermissibly suggestive. Defendant further argues that defense counsel was ineffective for failing to re-notice a motion to suppress the identification previously filed by defendant's first attorney. We disagree.

Defendant failed to preserve his claim by raising it in the trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Therefore, this Court's review of this constitutional issue is for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 762-763. Defendant bears the burden of proving plain error by showing "(1) [the] error must have occurred, (2) the error was plain, i.e. clear or obvious, (3) and the plain error affected substantial rights." *Id*. at 763 (citation omitted). To show that the error affected substantial rights, defendant must prove that "the error affected the outcome of the lower court proceedings." *Id*. (citation omitted).

"A photographic identification procedure violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998) (footnote and citation omitted). An impermissibly suggestive identification procedure is inadmissible at trial absent clear and convincing evidence that any in-court identification of the defendant is sufficiently independent from the illegal identification. *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998). In other words, "[s]imply because an identification procedure is suggestive does not mean it is necessarily constitutionally defective." *Id*. The fairness of an identification procedure must be evaluated based on the totality of the circumstances. *People v Davis*, 146 Mich App 537, 548; 381 NW2d 759 (1985).

At trial Williams testified that the police only showed him one photograph of defendant during his interview, and that he identified defendant from this photograph. Even if we accepted defendant's contention that this amounts to an impermissibly suggestive identification procedure, the prosecution presented ample clear and convincing evidence that Williams could sufficiently make an independent identification of defendant. Notably, Williams testified that defendant was a family friend, and although they had never "hung out," Williams had seen defendant for years around the neighborhood and was well familiar with him. Williams was even able to identify defendant by his street name: "Dirt." Therefore, the prosecution presented a sufficient independent basis for Williams's in-court identification of defendant. *Gray*¸ 457 Mich at 115-116.

Defendant also argues in his Standard 4 brief that trial counsel was ineffective for failing "to re-notice the Motion to Suppress Pre-Trial Identification that had been filed by retained counsel." However, our review of the lower court file did not yield any motion to suppress filed in this case by either of defendant's retained attorneys. Regardless, where there was a sufficient independent basis for Williams's identification, and being aware that Williams was familiar with defendant, defense counsel may have reasonably concluded that a motion challenging Williams's identification of defendant was not necessary, and would have been ultimately unsuccessful. Where counsel declines to pursue a meritless argument, this will not amount to ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## IV. PROSECUTORIAL MISCONDUCT

Defendant goes on to argue in his Standard 4 brief that the prosecutor committed error rising to the level of misconduct by presenting Williams's perjured testimony and forged written statement. Defendant also claims that defense counsel was ineffective for failing to object. We disagree.

Defendant failed to preserve this issue by raising a contemporaneous objection or requesting a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Because the alleged error was not preserved by a contemporaneous objection and a request for a curative instruction, appellate review is for plain (outcome-determinative) error." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). This Court utilizes the plain error test articulated in *Carines*: "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings." *Bennett*, 290 Mich App at 475-476, quoting *Callon*, 256 Mich App at 329. "Further, [this Court] cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476, quoting *Callon*, 256 Mich App at 329-330.

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). Each claim of prosecutorial misconduct is decided on a case-by-case basis, and must be examined by the reviewing Court in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010).

In his Standard 4 brief, defendant argues that the prosecutor engaged in misconduct by presenting Williams's testimony, which "changed drastically from one moment to the next[.]" Although Williams's testimony may have differed from his preliminary examination testimony, defense counsel used Williams's inconsistent statements to impeach him on cross-examination. Indeed, the jury was made aware of the inconsistencies in Williams's testimony, and could have considered those inconsistencies in weighing Williams's credibility and rendering its ultimate verdict. Further, defendant presents no conclusive evidence, and there is no suggestion in the record, that Williams lied under oath, or that the prosecutor knowingly presented perjured testimony.

Defendant also takes issue with the fact that on cross-examination, Williams admitted that the written statement he gave to police was not in his own handwriting, which defendant claims requires the conclusion that the written statement is a forgery. However, defendant fails to present any evidence that would suggest not only that the written statement was forged, but that the prosecutor knew the written statement was forged, and relied on it nonetheless. In fact, contrary to defendant's assertion, Williams admitted that although the statement was not in his own handwriting, he had seen the statement before and had signed all five pages. Based on the foregoing, defendant has not established that the prosecutor's conduct at trial rose to the level of prosecutorial misconduct. *Mann*, 288 Mich App at 119.

Finally, defendant claims that defense counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct. However, as discussed, the prosecutor's conduct at trial did not rise to the level of prosecutorial misconduct. Therefore, any objection by defense counsel would have been futile, and failure to raise a futile objection does not amount to ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201.

V. JAIL UNIFORM

-8-

Finally, defendant argues in his Standard 4 brief that he was denied his constitutional right to a fair and impartial trial because he was dressed in his jail uniform, as opposed to civilian clothing, during trial. Defendant further claims defense counsel was ineffective for allowing defendant to be tried in his jail uniform. We disagree.

Defendant initially preserved this issue by raising it in the trial court before the jury was empaneled. *People v Harris*, 80 Mich App 228, 230; 263 NW2d 40 (1977). With respect to a defendant's physical appearance at trial, this Court reviews a trial court's decision for an abuse of discretion. *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009), citing *People v Harris*, 201 Mich App 147, 151; 505 NW2d 889 (1993). This Court must "defer to the trial court's superior opportunity to observe the defendant and to determine whether the defendant's appearance prejudicially marks him or her as a prisoner." *Payne*, 285 Mich App at 186 (citation omitted).

On the first day of trial, defense counsel brought to the trial court's attention that defendant did not have clean civilian clothing to wear during trial. The trial court instructed defense counsel to obtain clean civilian clothing for defendant, and adjourned trial until the following morning. On the second day of trial, defendant and defense counsel did not make any further mention of the fact that defendant was still dressed in his jail uniform. Indeed, the only indication that defendant was not wearing civilian clothing during trial comes from the in-court identification of defendant from three separate witnesses. Specifically, Williams identified defendant as wearing "county colors," and Barnes and Fleming both identified defendant as wearing "tan."

This Court has previously determined that in order to preserve a defendant's fundamental right to a fair trial, "[a] defendant's timely request to wear civilian clothing must be granted." *Harris*, 201 Mich App at 151 (citations omitted). "A criminal defendant generally has the right to appear before the court with the appearance, dignity, and self-respect of a free and innocent man." *Payne*, 285 Mich App at 187 (citation and quotation marks omitted). Therefore, if a defendant requests civilian clothes to wear during trial, it would be improper to allow the defendant to appear before the jury "clothed as a convict." *People v Shaw*, 381 Mich 467, 474; 164 NW2d 7 (1969), quoting 21 Am Jur 2d, Criminal Law, § 239, pp 275-276. However, failure to raise a timely objection to wearing a jail uniform as opposed to civilian clothing "waives any defects as to a defendant's appearance before the jury," and a "prisoner who voluntarily *chooses* to stand trial in jail clothing cannot be heard to complain on appeal." *Harris*, 80 Mich App at 230 (emphasis added). Further, absent a showing that prejudice resulted, "this Court will not reverse a defendant's criminal conviction merely because the jury may have seen the defendant in" his jail uniform. See *People v Meyers (On Remand)*, 124 Mich App 148, 164; 335 NW2d 189 (1983) (citation and quotation marks omitted) (recognizing that this Court will not reverse a defendant's convictions where the jury observed defendant in handcuffs where there was no showing of prejudice).

From our review of the record, it can be logically inferred that where both defendant and defense counsel failed to raise the issue of defendant not having civilian clothing on the second day of trial, after defense counsel was instructed by the trial court to obtain civilian clothing for defendant, defendant voluntarily chose to wear his jail uniform. Accordingly, we are satisfied that any "defect" concerning defendant's "appearance before the jury" has been waived. *Harris*,

80 Mich App at 230. Additionally, this Court must "defer to the trial court's superior opportunity to observe the defendant and to determine whether the defendant's appearance prejudicially marks him or her as a prisoner." *Payne*, 285 Mich App at 186 (citation omitted). The trial court was aware of defendant's initial objection to wearing his jail uniform. However, on the second day of trial when defendant again appeared in his jail uniform, the trial court allowed the trial to proceed, which suggests that the trial court did not find defendant's appearance to be prejudicial. *Payne*, 285 Mich App at 186.

Finally, with respect to defendant's claim of ineffective assistance of counsel, defendant pointedly notes in his Standard 4 brief that "the record is completely void as to what occurred between the time a request for clean clothes was placed on the record and the time" that the trial began. Again, no record has been established from which this Court can evaluate defendant's claim. Even accepting defendant's argument that defense counsel was deficient for failing to follow through on obtaining civilian clothing for defendant, defendant has not shown that "but for counsel's [alleged] deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011) (citation omitted). As we have noted above, defendant was identified by Williams as participating in the armed robbery, and Barnes and Fleming testified that they observed defendant enter and exit Williams's home at the time of the armed robbery. Barnes and Fleming also testified that defendant was in the front passenger seat of the vehicle from which multiple gunshots were fired, one of which hit Barnes in the chin. Barnes specifically testified that he saw a flash from a firearm coming from the front of the vehicle. Therefore, ample evidence was presented from which a rational trier of fact would have found defendant guilty of the charged offenses beyond a reasonable doubt. Therefore, his claim of ineffective assistance of counsel lacks merit.

Affirmed.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan