# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KENNETH ALAN FIZER,

Defendant-Appellant.

UNPUBLISHED
December 11, 2018

No. 338744
Genesee Circuit Court
LC No. 16-040185-FH

Before: SHAPIRO, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of unlawful imprisonment, MCL 750.349b; first degree home invasion, MCL 750.110a(2); assault by strangulation, MCL 750.84(1)(b); assault with intent to commit criminal sexual conduct, MCL 750.520(g)(1); assault with a dangerous weapon, MCL 750.82; domestic violence, MCL 750.81(2); and larceny less than $200, MCL 750.356(5). The trial court sentenced defendant, as a 4th habitual offender, to 25 to 40 years' imprisonment on each of the convictions for unlawful imprisonment, first degree home invasion, assault by strangulation and assault with intent to commit criminal sexual conduct, 8 to 15 years' for the assault with a dangerous weapon conviction, and 93 days for the convictions for domestic violence and larceny less than $200. We affirm defendant's convictions, but remand to the trial court for resentencing on defendant's convictions for unlawful imprisonment, first degree home invasion, and assault with intent to commit criminal sexual conduct.

On appeal, defendant first asserts that his convictions were against the great weight of the evidence and that there was insufficient evidence to support his convictions. The de novo standard of review is employed in reviewing a defendant's claim that the evidence was insufficient to support his or her convictions. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). We review an unpreserved challenge to the great weight of the evidence "for plain error affecting the defendant's substantial rights." *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218–19; 673 NW2d 800 (2003).

-1-

The evidence at trial showed that on August 8, 2016, defendant entered the apartment of his estranged girlfriend, Sandra Cross, with a key she had given him when the two had previously resided together. Cross was in her bedroom in the apartment and emerged into the living room to find defendant in her home. Defendant appeared to Cross to be under the influence of drugs and she wanted him to leave her apartment. Cross testified that she and defendant began to argue and when she went to leave the apartment, he pulled her back in, and then stuck two knives in the door to prevent it from opening. Cross told police that defendant put a knife to her throat and threatened to kill her and told them that defendant also threw her down on the couch, choked her, and started to pull his pants down while holding a knife to her, telling Cross he was going to rape her.

The property manager of the apartment building received a call concerning a domestic disturbance at Cross's apartment and she and a maintenance person from the building went to Cross's apartment to investigate. They could hear scuffling inside the apartment and, after knocking on the door, they heard a female voice inside the apartment ask for help. The maintenance person announced that they were coming in and Cross opened the door, appearing flustered and scared, and asked the two to get defendant out of her apartment. Defendant, shirtless and buttoning up his pants, left, but was arrested a short time later in the vicinity of Cross's apartment. According to witnesses, security footage from the exterior of the apartment building showed Cross attempting to leave her apartment and being pulled back into the apartment by defendant.

Addressing defendant's conviction for unlawful imprisonment, the unlawful imprisonment statute, MCL 750.349b, provides that one is guilty of that crime if:

. . . he or she knowingly restrains another person under any of the following circumstances:

(a) The person is restrained by means of a weapon or dangerous instrument.

(b) The restrained person was secretly confined.

(c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony.

The term "restrain" is defined in the statute as "to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority." MCL 750.349b(3)(a). Restraint does not need to occur "for any particular length of time." MCL 750.349b(3)(a). The phrase "secretly confined" is defined as (a) "[t]o keep the confinement of the restrained person a secret" or (b) "[t]o keep the location of the restrained person a secret." MCL 750.349b(3)(b). In *People v Jaffray*, 445 Mich 287, 309; 519 NW2d 108 (1994), our Supreme Court further explained:

[T]he essence of "secret confinement" as contemplated by the statute is deprivation of the assistance of others by virtue of the victim's inability to communicate his predicament. "Secret confinement" is not predicated solely on the existence or nonexistence of a single factor. Rather, consideration of the totality of the circumstances is required when determining whether the

confinement itself or the location of confinement was secret, thereby depriving the victim of the assistance of others.

There was testimony by the property manager and Officer Larrisa Fuester that they viewed a video surveillance tape of Cross's apartment building and saw Cross being dragged back into her apartment and the door being slammed shut. Cross testified that defendant pulled her back into the apartment and put knives in the door to keep the door shut, as did defendant, albeit with an explanation. Sergeant William Surface and Officer Fuester also testified that Cross told them that after defendant pulled her back in the apartment, he held a knife to her throat, attempted to pull down his pants, and told her he was going to rape her. This evidence was sufficient to support defendant's conviction of unlawful imprisonment under MCL 750.349b(1)(a), (b), or (c).

There was also sufficient evidence to support defendant's conviction of first degree home invasion. MCL 750.110a(2) provides:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

In *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010) our Supreme Court carefully broke down the elements of first degree home invasion as follows:

> Element One: The defendant *either:*
>
> 1. breaks and enters a dwelling or
>
> 2. enters a dwelling without permission.
>
> Element Two: The defendant *either:*
>
> 1. intends when entering to commit a felony, larceny, or assault in the dwelling or
>
> 2. at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault.

Element Three: While the defendant is entering, present in, or exiting the dwelling, *either:*

1. the defendant is armed with a dangerous weapon or

2. another person is lawfully present in the dwelling.

Cross testified that defendant had keys to her apartment and she knew he would be coming over on August 8, 2016, to get some clothes from her apartment. She did not, however, testify that defendant could enter her apartment with the keys whenever he wished. She testified that they were not residing together and were working on their relationship. Moreover, Cross testified that she called 911 and that she told the apartment building personnel at her door that she wanted defendant out of her apartment. Sergeant Surface also testified that Cross had told him that defendant did not have permission to be in her home. There was thus sufficient evidence for a jury to find that defendant did not have permission to enter Cross's home, thereby satisfying the first element of first degree home invasion.

The jury could have easily found that while in Cross's apartment, defendant committed a felony, larceny, or assault, thus satisfying the second element of first degree home invasion. As indicated above, there was enough evidence to find that defendant committed the crime of unlawful imprisonment. As will be later addressed, there was sufficient evidence to find that defendant committed other felonies while in Cross's apartment as well.

Finally, it is undisputed that another person, Cross, was in the apartment when defendant was in the dwelling. It is also undisputed the defendant was armed with a dangerous weapon while he was in the apartment. Defendant testified that he had a gun with him in the apartment that he had stolen from a drug dealer. Cross testified that defendant took two knives and put them in the door to prevent her from leaving. Officer Fuester and Sergeant Surface testified that Cross told them that defendant had held a knife to her throat and had put knives in the door. All three of the elements of first degree home invasion having been met, there was sufficient evidence to convict defendant of that offense.

Defendant was also convicted of assault by strangulation. MCL 750.84(1)(b) provides that a person is guilty of a felony if he or she "[a]ssaults another person by strangulation or suffocation." An assault is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011). A battery is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id.* MCL 750.84(2) defines the phrase "strangulation or suffocation" as "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person."

At trial, Cross denied that defendant choked her or strangled her. She testified that she may have told the police that so that defendant would be picked up and go to jail. She also testified that defendant tried to grab her neck, but she pushed his hands away. However, Officer Fuester testified that when she first made contact with Cross, Cross had redness and swelling around her neck and scratches on her arms. Officer Fuester further testified that Cross was

trying to catch her breath while speaking and her voice was raspy. She testified that Cross said it hurt to swallow water. Officer Eric Eads similarly testified that he could see red marks on Cross's neck. Sergeant Surface additionally testified that Cross told him that defendant had choked her and that she almost fainted because she could not breathe. Finally, a domestic violence expert testified at trial that victims of domestic violence often recant their statements against their abusers and downplay the abuser's violence.

"It is the province of the jury to determine questions of fact and assess the credibility of witnesses." *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998). The jury was therefore free to find that Cross's testimony at trial was not credible and the other testifying witnesses' testimony was more believable. There was sufficient evidence presented to the jury that would allow them to find that defendant had assaulted Cross by strangling her.

Defendant's conviction of assault with intent to commit criminal sexual conduct was also sufficiently supported by the evidence. MCL 750.520(g)(1) provides that assault with intent to commit criminal sexual conduct involving sexual penetration is a felony punishable by up to ten years' imprisonment. The elements of this crime are simply, as stated in the statute, (1) an assault and (2) and intent to commit CSC involving sexual penetration. *People v Nickens*, 470 Mich 622, 627; 685 NW2d 657 (2004). As previously stated, an "assault" is an attempt to commit a battery or unlawful act that places another in fear of receiving an immediate battery and "battery" is the an intentional, unconsented and harmful or offensive touching of another person. *Cameron*, 291 Mich App at 614.

Cross testified at trial that defendant did not attempt to rape her or sexually assault her in any way. Defendant also denied any actual or attempted sexual contact with Cross. Officer Eads, on the other hand testified that the first thing Cross said when they arrived at the door was that defendant tried to rape her. Officer Fuester and Sergeant Surface also both testified that Cross told them that defendant threw her down on the couch, held a knife to her throat, told her he was going to rape her, and attempted to pull down his pants but stopped when there was a knock on her door and the maintenance personnel arrived. The jury additionally heard a recorded phone conversation between defendant and Cross wherein defendant asked Cross if she said that he had tried to rape her. Cross said she had. During the conversation, neither Cross nor defendant denied that he had tried to rape her. Based on the above, there was sufficient evidence to convict defendant of assault with intent to commit criminal sexual conduct.

Next, defendant's conviction of assault with a dangerous weapon (felonious assault) stands. MCL 750.82 provides: "(1) Except as provided in subsection (2), a person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony . . . ." "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

Officer Fuester and Sergeant Surface's testimony that Cross told them that defendant held a knife to her throat and told her he would rape her establishes that defendant assaulted Cross with a dangerous weapon. In the recorded telephone conversation between Cross and defendant,

Cross told defendant she was afraid of him and felt he was trying to kill her. While Cross denied being afraid of defendant at trial and further denied that he assaulted her on August 8, 2016, she also testified that he pulled her back into the apartment when she wanted to leave. Moreover, the jury was free to believe the officers' testimony over Cross's trial testimony. *Lemmon*, 456 Mich at 637.

The domestic violence statute under which defendant was convicted, MCL 750.81(2), states:

> Except as provided in subsection (3), (4), or (5), an individual who assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

The relevant elements of the charged domestic assault offense include (1) the commission of an assault or an assault and battery and (2) a dating relationship between the parties.

Cross and defendant both testified that they were or had very recently been in a dating relationship. The same facts identified as support for defendant's felonious assault conviction serve as support for defendant's conviction of domestic violence. Moreover, in recorded telephone conversations placed from jail defendant admitted that the August 8, 2016, incident was a domestic violence incident and defense counsel acknowledged during his closing argument that defendant admitted he was guilty of domestic violence.

Defendant's final conviction was for larceny less than $200. A person who commits larceny by stealing the property of another person and the property has a value of less than $200, is guilty of a misdemeanor. MCL 750.356(5). Because "larceny" is not statutorily defined, we rely on the common law to define that term. *People v March*, 499 Mich 389, 400-401; 886 NW2d 396 (2016). The common law articulations of the word "larceny" lead to the following six elements that must be proven in order to convict a person of larceny:

> (a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property. To these elements, MCL 750.360, the statute addressing larceny in a building, adds one further element: (f) "the taking . . . occurr[ing] within the confines of the building." [*People v*] *Randolph*, 466 Mich [532,] 552 n. 2; 648 NW2d 164 [2002]. Therefore, the prosecutor must prove each of these six elements in order to obtain a conviction. [*Id*. at 401-402]

At trial, Cross testified that defendant mistakenly took her phone when he left her apartment and that her phone had a value of $47. Officer Fuester, on the other hand, testified that while defendant was in the back of her car, he said "Tell that bitch I ain't giving her keys and her phone back because I'll be back." Whether defendant intentionally or mistakenly took Cross's phone was a question of fact and of credibility for the jury to decide. *Lemmon*, 456 Mich at 637. This Court will not resolve credibility issues anew on appeal. *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002).

Defendant next asserts that the trial court abused its discretion when it allowed the prosecutor to play a video for the jury showing him in jail attire. We generally review evidentiary issues for an abuse of discretion. *Michigan Dept of Transp v Haggerty Corridor Partners Ltd Pship*, 473 Mich 124, 133–34; 700 NW2d 380 (2005). "A trial court abuses its discretion when it admits evidence that is inadmissible as a matter of law." *Id*. at 134. However, because defendant did not object to the admission of the challenged evidence in this case, "he must demonstrate plain error affecting his substantial rights, meaning that he was actually innocent or that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of his innocence." *People v Carines,* 460 Mich 750, 763; 597 NW2d 130 (1999).

It has long been held that a defendant has a due process right to wear civilian clothing rather than identifiable prison garb while in the presence of a jury at trial. See, e.g., *People v Shaw,* 381 Mich 467, 474–475; 164 NW2d 7 (1969); *People v Harris*, 201 Mich App 147, 151; 505 NW2d 889 (1993). However, defendant does not argue here that he was clothed in identifiable jail garb before the jury at trial. Rather, he challenges the jury's viewing of a videotaped interview of defendant by police in which defendant was attired in jail garb. The trial court did not compel defendant to wear jail garb in front of the jury, which would violate due process, as first alleged by defendant, but rather it exercised its discretion by admitting evidence which incidentally showed defendant in jail garb. Defendant's video interview in which he stated facts about what occurred on August 8, 2016, qualifies as an admission by a party opponent under MRE 801(d)(2), as found by the trial court, and was therefore admissible. Defendant contends that the admission of this evidence was nevertheless more prejudicial than probative. We disagree.

MRE 402 provides that evidence that is relevant is generally admissible. MRE 401 defines "relevant evidence" as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403.

The videotaped interview was played, but not transcribed during the court proceedings and there is no copy of it attached to defendant's brief or in the lower court record. MCR 7.212(C)(7) requires that an appellant's brief contain specific page references to the transcripts, pleadings, or other document or paper filed with the trial court to support factual allegations. Under MCR 7.210(B)(1), it is the appellant's responsibility to obtain full transcripts of lower court proceedings for purposes of appeal or, if a transcript cannot be obtained, to take certain procedural steps. Defendant failed to meet his responsibilities and, as a result, cannot show plain error affecting his substantial rights due to the admission of the videotaped interview.

Defendant claims that the trial court also abused its discretion in admitting the hearsay testimony of Officers Fuester and Sergeant Surface under MCL 768.27c(1) without first conducting an evidentiary hearing. Defendant argues that a hearing was required to ascertain whether the statements Cross made to Sergeant Surface were, in fact, accurately reported by Sergeant Surface before the statements could be admitted under MCL 768.27c. We disagree.

MCL 768.27c provides, in relevant part:

> (1) Evidence of a statement by a declarant is admissible if all of the following apply:
>
> (a) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant.
>
> (b) The action in which the evidence is offered under this section is an offense involving domestic violence.
>
> (c) The statement was made at or near the time of the infliction or threat of physical injury. Evidence of a statement made more than 5 years before the filing of the current action or proceeding is inadmissible under this section.
>
> (d) The statement was made under circumstances that would indicate the statement's trustworthiness.
>
> (e) The statement was made to a law enforcement officer.

In enacting MCL 768.27c, the Legislature determined that under certain circumstances, statements made to law enforcement officers are admissible in domestic violence cases. *People v Meissner*, 294 Mich App 438, 445; 812 NW2d 37 (2011). "MCL 768.27c(2) provides guidance for trial courts to assess whether a statement was made under circumstances that would indicate the statement's trustworthiness." *Id*. at 448.

Notably absent in MCL 768.27c is the requirement of an evidentiary hearing. We must interpret statutes according to the Legislature's plainly expressed meaning, and we must apply statutes as written. *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008). Defendant has provided no law suggesting that an evidentiary hearing was necessary to determine the trustworthiness of the officer's statements concerning what Cross told them, particularly where Cross and the officers all testified at trial and were subject to cross-examination concerning their respective statements. When a party announces a position and provides no authority to support it, we may consider the issue waived. *Natl Waterworks, Inc v Intl Fid & Sur, Ltd*, 275 Mich App 256, 265; 739 NW2d 121 (2007).[1]

As a final evidentiary challenge, defendant asserts that he trial court abused its discretion in allowing Officer Eads to testify concerning statements Cross made to him because the trial court's ruling allowed the admission of Cross's statements to Officer Fuester and Sergeant Surface only. This challenge fails for three reasons.

---

[1] In addition, a hearing was held on plaintiff's motion to admit Cross's statements made to law enforcement officials under MCL 768.27c and defendant's counter-motion to have the statements suppressed. The issue of the trustworthiness of the statements was fully explored by the trial court and we find no error in its finding that the testimony was trustworthy.

First, defendant has provided no support for his argument that if a trial court purportedly violates its own evidentiary order, the remedy is reversal and a new trial. We may thus consider the issue waived on appeal. See, *Id*. Second, the trial court's order granting plaintiff's motion did not limit the admitted statements to just the two named officers. The trial court entered the order for the "reasons stated on the record" and, while the record references only the proposed testimony of Officer Fuester and Sergeant Surface, it is not apparent that either plaintiff or the trial court was aware at that time that Cross made any statements about threats of injury by defendant to or in the presence of Eads. Third, given the evidence in the case, defendant cannot demonstrate that the admission of Officer Eads testimony was plain error affecting his substantial rights.

Defendant next claims on appeal that the prosecutor committed acts of misconduct which denied him his Due Process rights. We disagree.

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). To make this determination, we evaluate the prosecutor's remarks and conduct as a whole, and in context. *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). We review a defendant's unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). To avoid forfeiture under the plain error rule, the defendant bears the burden to show that "(1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error prejudiced substantial rights, i.e., the error affected the outcome of the lower court proceedings." *Cameron*, 291 Mich App at 618. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence." *Ackerman*, 257 Mich App at 448-449.

Defendant first asserts that plaintiff committed misconduct by using, without correcting, false or perjured testimony by Officer Fuester. The prosecutor violates a defendant's right to due process and commits misconduct when he or she knowingly uses false testimony to obtain a conviction, or fails to correct false evidence or perjured testimony. *People Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001).

Defendant takes issue with purported differences between Officer Fuester's preliminary examination and trial testimony which he contends lead to the conclusion that Officer Fuester's trial testimony was false or perjured testimony that the prosecution allowed without correction.[2] However, defendant has failed to establish that the challenged testimony was in fact inconsistent

---

[2] Defendant also alleges that Officer Fuester's testimony concerning the placement of knives in Cross's apartment and the admission of a photograph of knives indicated that the prosecutor violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 LEd2d 215 (1963). Defendant has not established, however, that the prosecution suppressed any material evidence that is favorable to him. See, *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014).

-9-

with her preliminary examination testimony or was actually false. And, to the extent there were minor differences in Officer Fuester's testimony, "[a]lthough an inconsistent prior statement may be a mechanism to impeach a witness's credibility at trial, it is not definitive evidence that the trial testimony is false." *People v Bass*, 317 Mich App 241, 275; 893 NW2d 140 (2016). Defendant has failed to show that plaintiff used false or perjured testimony in this regard.[3]

Next, defendant claims he was denied the effective assistance of counsel. Because defendant did not move in the trial court for a new trial or an evidentiary hearing concerning his claim of ineffective assistance of counsel, we review his unpreserved claim for mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

Under both the Michigan and the United States Constitutions, a criminal defendant is entitled to the assistance of counsel for his or her defense. Const 1963, art. 1, § 20; US Const, Am. VI. To justify reversal of a conviction based upon the lack of effective assistance of counsel under the standard our Supreme Court has adopted from *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *People v Trakhtenberg*, 493 Mich 38, 51–52; 826 NW2d 136 (2012). In doing so, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant's claim that counsel was ineffective for failing to object to three instances of prosecutorial misconduct fails because this Court finds that there was no misconduct, and "counsel is not ineffective for failing to raise meritless or futile objections." *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015). Defendant's claim that counsel was ineffective for failing to object when a video of defendant wearing jail garb was played for the jury also fails because defendant has failed to support his claim that the admission of the video was an abuse of the trial court's discretion or otherwise in error, as previously indicated by this Court. Trial counsel's failure to object, then, does not amount to ineffective assistance of counsel. *Id*.

Defendant's claim that counsel was ineffective for failing to introduce as evidence three purportedly exculpatory letters that defendant had received from Cross is also without merit. Defendant asserts that he gave the letters to counsel and when he asked counsel about them at trial, counsel told him he did not have them. Defendant asserts that the letters were consistent with his claim of innocence and to show that Cross was not afraid of defendant.

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). More importantly, to fulfill the heavy burden of establishing ineffective assistance of counsel based on counsel's failure to present evidence, a defendant must

---

[3] Defendant's remaining two allegations of prosecutorial conduct actually concern the admission of evidence, which this Court previously addressed.

demonstrate that counsel's failure to introduce the specific evidence deprived him of a substantial defense. *People v Bosca*, 310 Mich App 1, 40; 871 NW2d 307 (2015). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

Here, Cross testified at trial that she had not been honest with the police about the events of August 8, 2016, and told the police some things that were not true because she wanted defendant to be picked up so he could get help for his drug problems. She also testified that she was not afraid of defendant, but was afraid of the "drug people" he dealt with and that defendant had not choked her, assaulted her, or attempted to rape her on August 8, 2016. The information defendant sought to introduce was thus presented at trial directly through Cross. He was not deprived of a substantial defense through the failure to admit letters Cross wrote proclaiming defendant's innocence.

Defendant additionally argues that trial counsel was ineffective for failing to play the non-redacted version of the phone calls that were played for the jury during trial and to play additional phone calls defendant had placed from the jail. First, defendant has not identified any additional phone calls that he believes would have been beneficial to his defense. Second, the record reflects that the redactions to the phone calls were to eliminate the mentions of a polygraph examination, the results of which would not be admissible in court, and defendant's prior criminal record and offenses, which would have been prejudicial to defendant. Defendant has not explained, let alone demonstrated, how the failure to play the unredacted phone calls prejudiced him in any way or amounted to plain error affecting his substantial rights. Instead, the redaction of the phone calls appears to be a matter of trial strategy, and this Court will not second guess counsel on its judgment concerning matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

Defendant lastly avers that counsel was ineffective for refusing to present a motion defendant had written for prosecutorial misconduct and to recall Cross to the stand in rebuttal. This Court has found no prosecutorial misconduct. Failing to advance a meritless argument does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). And, the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

Cross testified at trial and was thoroughly examined and cross-examined. Sergeant Surface was recalled by the prosecution as a rebuttal witness and on rebuttal his only testimony with respect to Cross was that Cross told him defendant had not stayed the night at her apartment since they broke up in June and he did not have her permission to be at her apartment. Cross had already testified, however, that she had told police that she and defendant had broken up in June and were not living together, but that they were still communicating and trying to get their relationship on track, that she knew defendant was coming back to her apartment to get some clothes on August 8, 2016, and that he had keys. There was no additional testimony that defendant argues Cross could have provided on rebuttal that was not fully explored during her direct testimony or cross-examination and defendant has failed to show that he was deprived of a substantial defense or that there was plain error affecting his substantial rights.

Defendant's last argument on appeal is that his sentence should be vacated because he was not arraigned in the circuit court as required by court rules, because the charges that appeared on his felony information in the circuit court were incorrect, and because the prosecutor failed to timely file the fourth habitual offender notice. Defendant's argument is without merit.

MCR 6.113 provides that a defendant must be arraigned on the indictment or information before the court with trial jurisdiction. That rule also provides that "[u]nless the defendant demonstrates actual prejudice, failure to hold the arraignment on the scheduled date is to be deemed harmless error." MCR 6.113(A). MCR 6.113(E) additionally states that a trial court may enact a local order administrative order eliminating arraignment for a defendant who is represented by an attorney, so long as other arrangements are made to give the defendant a copy of the information. Such a local administrative order was enacted by the trial court here on September 29, 2011, defendant was represented by an attorney, and the record reflects that defendant had notice of the charges against him. Moreover, a showing of prejudice is required to merit relief for the failure to hold a circuit court arraignment. MCR 6.113(A); *People v Nix*, 301 Mich App 195, 208; 836 NW2d 224 (2013). Defendant had a trial on all of the charges against him, after which he was convicted. He cannot demonstrate that the lack of a circuit court arraignment prejudiced him in any way.

As to whether the charges appearing on defendant's felony information were correct, the original felony information filed in the circuit court erroneously states that defendant was charged with kidnapping.[4] The error was discovered during a November 28, 2016 hearing, at which defendant pointed out the error. The prosecutor and trial court both agreed that defendant was correct and on December 2, 2016, plaintiff filed an amended information containing the correct charges against defendant.

"An information may be amended at any time before, during, or after trial to cure any defect, imperfection, or omission in form or substance, including a variance between the information and the proofs, as long as the accused is not prejudiced by the amendment . . . ." *People v Higuera*, 244 Mich App 429, 444; 625 NW2d 444 (2001), citing MCL 767.76. MCL 767.76 provides, in relevant part:

No indictment shall be quashed, set aside or dismissed or motion to quash be sustained or any motion for delay of sentence for the purpose of review be granted, nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment, unless the objection to such indictment, specifically stating the defect claimed, be made prior to the commencement of the trial or at such time thereafter as the court shall in its discretion permit.

---

[4] Defendant was initially charged with kidnapping as an alternative to the charge of unlawful imprisonment, but he was bound over to the trial court after his preliminary examination on the unlawful imprisonment charge.

Defendant has articulated no prejudice by the incorrect listing of one offense on his initial felony information and can show none.

Lastly, MCL 769.13 provides that, in a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as allowed under MCL 769.10, MCL 769.11, or MCL 769.12, "by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense." The amended information in this case was filed on December 2, 2016, and on that same date, plaintiff filed a proof of service indicating that the amended information and the *prior* notice of intent to seek sentence enhancement was served upon defendant's counsel. Defendant thus had notice of the plaintiff's intent to seek sentence enhancement both prior to and after the amendment of his felony information.

Although not directly on point, *People v Hornsby*, 251 Mich App 462 provides some guidance on this issue. In that case, defendant argued on appeal (among other things) that the trial court erred in sentencing him as a third habitual offender because although a notice of the same was timely filed initially, the prosecutor later untimely filed an amendment of the notice to correct the prior felonies enumerated on the notice. *Id*. at 469. The defendant contended that this untimely amendment of the notice should have foreclosed sentence enhancement. *Id*. We disagreed, noting that:

> the amended information did not increase defendant's potential sentence because the amendment did not change defendant's habitual offender level. Defendant does not dispute that he received timely notice that the prosecutor sought to charge him as a third-offense habitual offender and does not dispute the validity of the underlying offenses supporting his status as a third-offense habitual offender. Apart from claiming a statutory violation, he has not alleged any prejudice arising from the allegedly untimely amendment. Because the amendment did not change in any way the potential consequences of a conviction, of which defendant had received proper notice, we conclude that the trial court properly denied defendant's motion challenging the amendment of the notice to seek sentence enhancement and properly sentenced defendant as a third-offense habitual offender. [*Id*. at 472-473]

The same logic applies here. Defendant does not deny that a timely filed notice of sentence enhancement accompanied the initial felony information. The amended felony information did not change defendant's habitual offender level, defendant does not dispute that he was aware that the prosecutor sought to charge him as a fourth habitual offender, defendant does not dispute the validity of the underlying offenses supporting his status as a fourth habitual offender and he has not shown any prejudice arising from the failure to completely re-file the notice when the felony information was amended. Thus, defendant's claim is without merit.

Defendant is, however, entitled to resentencing based on the plaintiff's admission of error concerning which of defendant's convictions were subject to "super" enhancement. That status should have been applied to defendant's convictions for assault by strangulation and assault with

intent to commit criminal sexual conduct, but should not have been applied to his convictions for unlawful imprisonment and first degree home invasion; those convictions were subject only to habitual 4th offender status. Defendant is thus entitled to resentencing on his convictions for unlawful imprisonment, first degree home invasion, and assault with intent to commit criminal sexual conduct.

Affirmed, but remanded to the trial court for resentencing on his convictions for unlawful imprisonment, first degree home invasion, and assault with intent to commit criminal sexual conduct. We do not retain jurisdiction.


/s/ Douglas B. Shapiro
/s/ Deborah A. Servitto
/s/ Michael F. Gadola

-14-