*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SETH VINCENT HORTON,

Defendant-Appellant.

FOR PUBLICATION
April 21, 2022
9:15 a.m.

Nos. 359012; 359218
Chippewa Circuit Court
LC No. 19-003955-FC

Before: CAMERON, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendant stands charged with two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (sexual penetration accomplished through force or coercion and causing personal injury). Both appeals arise from the untimely death of the complaining witness. In Docket No. 359012, defendant appeals as on leave granted[2] the trial court's order denying his motion to suppress evidence of the complaining witness's death. In Docket No. 359218, defendant appeals by leave granted[3] the trial court's order denying his motion to suppress the video of the complaining witness's preliminary examination testimony. We affirm.

## I. BACKGROUND

The complaining witness accused defendant of sexually assaulting her, and defendant was charged with two counts of CSC-I. On October 16, 2019, the complaining witness testified at defendant's preliminary examination, and defendant was bound over to the circuit court on both

---

[1] This Court consolidated these appeals on its own motion "to advance the efficient administration of the appellate process." *People v Horton*, unpublished order of the Court of Appeals, entered December 15, 2021 (Docket Nos. 359012 and 359218).

[2] *People v Horton*, ___ Mich ___; 966 NW2d 692 (2021).

[3] *People v Horton*, unpublished order of the Court of Appeals, entered November 15, 2021 (Docket No. 359218).

CSC-I charges. On June 17, 2021, the complaining witness was involved in a car accident, and she died as a result of her injuries. The prosecution elected to proceed with this case by using her preliminary examination testimony, and defendant does not dispute that this would be permissible. However, defendant filed a motion to preclude the prosecution from informing the jury of her death, arguing that it would generate sympathy for her and her family. The prosecution argued that failing to inform the jury that the complaining witness was absent from the trial because she had died would unfairly undermine her credibility. Defendant filed a separate motion to preclude admission of the video of the preliminary examination because he could be seen wearing jail garb, and he argued that this clothing would undermine the presumption of innocence. The trial court denied both motions, and defendant sought interlocutory relief.

## II. DUE PROCESS

Defendant argues that playing the video of the complaining witness's preliminary examination testimony would violate his due-process rights because he was dressed in jail garb. We disagree.

### A. STANDARD OF REVIEW AND GOVERNING LAW

An alleged violation of a criminal defendant's due-process rights presents a constitutional question and is reviewed de novo. *People v Wilder*, 485 Mich 35, 40; 780 NW2d 265 (2010). The United States Constitution and the Michigan Constitution each guarantee that a criminal defendant receives due process of law. US Const, Am XIV; Const 1963, art 1 § 17. Implicit in this guarantee is that each criminal defendant enjoys the right to a fair trial, and essential to a fair trial is the defendant's right to be presumed innocent. *People v Johnson*, 315 Mich App 163, 179; 889 NW2d 513 (2016) (citation omitted). "Under the presumption of innocence, guilt must be determined solely on the basis of the evidence introduced at trial rather than on official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *People v Rose*, 289 Mich App 499, 517; 808 NW2d 301 (2010) (quotation marks and citation omitted).

The idea that criminal defendants cannot be forced to appear before the jury in jail garb was first recognized in Michigan when our Supreme Court decided *People v Shaw*, 381 Mich 467; 164 NW2d 7 (1969). The Court stated that defendants are "entitled to wear civilian clothes rather than prison clothing" because it is important that a defendant "be brought before the court with the appearance, dignity, and self-respect of a free and innocent man . . . ." *Id*. at 474 (quotation marks and citation omitted). The United States Supreme Court subsequently recognized the right of criminal defendants to be tried in civilian clothing in *Estelle v Williams*, 425 US 501; 96 S Ct 1691; 48 L Ed2d 126 (1976). "This is a recognition that the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout the trial that . . . an unacceptable risk is presented of impermissible factors coming into play." *Id*. at 504-505.

### B. APPLICATION

Defendant's argument that admission of the preliminary examination video would undermine the presumption of innocence in violation of his due-process rights is without merit. In both *Shaw* and *Estelle*, the opinions were limited to those cases in which the defendant is forced

-2-

to appear *before the jury at trial* while wearing jail garb. There is no authority in support of defendant's argument that viewing a video in which the defendant is seen in jail garb would so undermine the presumption of innocence as to violate the constitutional guarantees of due process. Indeed, the concerns that guided the Michigan and United States Supreme Courts in holding that a defendant cannot be forced to wear jail garb at trial are not present in this case. For example, in *Estelle*, the United States Supreme Court emphasized the high probability that the clothing would "be a continuing influence throughout the trial," *id.* at 505, and that risk is simply not present here. If a defendant wore jail garb for the entirety of the trial then the only image the jury would have of the defendant would be of him dressed in incriminating clothing. This would be substantially more damaging than a scenario, such as this, in which the jury briefly saw a video of the defendant wearing jail garb, but only saw him wearing civilian clothing when in person at trial. Further, jailhouse interrogation videos, in which the defendants frequently appear in jail garb, are routinely admitted at trial and this is not a significantly different scenario. Because playing the video of the complaining witness's preliminary examination testimony—where defendant appears in jail garb—would not undermine the presumption of innocence, it does not violate his due-process rights.

## III. RELEVANCE AND MRE 403

Defendant argues that if showing the jury the video from the preliminary examination does not violate his due-process rights it nonetheless should be excluded pursuant to MRE 403. Defendant further argues that any evidence of the complaining witness's death is not relevant, and, to the extent that it is relevant, is likewise inadmissible pursuant to MRE 403. We disagree.

### A. STANDARD OF REVIEW AND GOVERNING LAW

Preserved evidentiary challenges are reviewed for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes. A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id.* at 251-252 (quotation marks and citation omitted). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. MRE 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Schaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010) (quotation marks and citation omitted; alteration removed).

### B. APPLICATION OF MRE 403 TO PRELIMINARY EXAMINATION VIDEO

The trial court did not abuse its discretion by concluding that the probative value of the preliminary examination video was not substantially outweighed by the risk of unfair prejudice.

It is undisputed that the complaining witness's testimony from the preliminary examination is admissible under MRE 804(b)(1). However, defendant argues that the prosecution ought to be

-3-

required to either play only the audio or read the transcript, while the prosecution argues that a fair assessment of credibility would require the jury to actually see the witness. Therefore, when undertaking the balancing test articulated in MRE 403, we will assess the value gained from seeing the complaining witness rather than just hearing her, and weigh this against the risk of unfair prejudice stemming from defendant's clothing.

The probative value added by playing the video of the testimony instead of playing the audio or reading the transcripts is substantial. "In most criminal sexual conduct cases there are no nonparticipant witnesses to the crime, which reduces the cases to weighing the defendant's credibility against that of the victim's." *People v Beckley*, 434 Mich 691, 717; 456 NW2d 391 (1990). Indeed, the Supreme Court has "recognized that the principle [sic] issue in cases involving criminal sexual conduct is the credibility of the complainant." *Id*. at 717 n 39. Seeing the witness is an important component of assessing the witness's credibility because it enables jurors to observe factors such as demeanor and body language, and the jurors can obtain a better understanding of the witness's mood and nonverbal cues. Anything that can assist the jury in assessing the credibility of the complaining witness in a credibility contest has significant probative value. The risk of unfair prejudice, however, is less significant. For the entirety of the trial defendant will be dressed in civilian clothes, so the risk of an ongoing taint of the jury's perception of him would be diminished. Moreover, because defendant will be on trial for a serious crime, the jury will already be aware that defendant at some point was arrested and in police custody. Finally, the court will presumably provide appropriate instructions regarding the presumption of innocence and defendant's clothing in the video. Jurors are presumed to follow their instructions. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

## C. RELEVANCE OF THE DEATH OF THE COMPLAINING WITNESS

The trial court properly determined that evidence that the complaining witness is unavailable to testify because she died in a car accident is relevant.

The explanation for why a witness is unavailable to testify may be probative of the witness's credibility. For example, if a complaining witness did not appear at trial because the witness recanted and did not want the prosecution to proceed, this fact would clearly reduce the likelihood that the contents of the witness's initial testimony were true, while if a complaining witness did not appear at trial because the witness was threatened by the defendant, this could suggest consciousness of guilt on the part of the defendant. There also are instances in which the explanation for a witness's absence may not be relevant. For example, if an uninterested witness did not testify because the witness moved and the parties were unable to reach the witness, the explanation for the witness's absence may not be particularly relevant to any issue of consequence.

In the present case, the knowledge that the complaining witness did not appear because she is dead would assist the jury in assessing her credibility. If the jury is not informed why she is unavailable, it would be left to speculate about her absence, and it is likely to assume that her absence was caused by a reason that does impact the truthfulness of her initial statement. On the one hand, the jury could speculate that her absence was caused by a recantation or a desire not to see defendant prosecuted. On the other hand, the jury could speculate that her absence was caused by fear of the person who assaulted her. If the jury were aware that she died in an unrelated accident, then it would know that her absence was caused by circumstances that have no bearing

on her credibility, and this would negate the risk that the jury might erroneously allow her absence to impact its assessment of her credibility.

Further, an explanation as to why the complaining witness is unavailable to testify is also relevant because Snapchat videos where defendant threatened to kill the witness have been deemed by the trial court to be admissible evidence at trial. Thus, the unexplained absence of the complaining witness at the trial could wrongly lead the jury to infer that her absence is attributable to defendant, i.e., that he killed her.

## D. APPLICATION OF MRE 403 TO THE DEATH OF THE COMPLAINING WITNESS

The trial court did not abuse its discretion by concluding that the probative value of this evidence was not substantially outweighed by the risk of unfair prejudice.

Defendant argues that if evidence of the complaining witness's death is relevant it should nonetheless be excluded under MRE 403 because the probative value is substantially outweighed by the risk of unfair prejudice. Defendant argues that the untimely death would cause "[a]ny decent person" to "feel sympathy for her and her family" and that this "sympathy could incline the jurors to convict." Defendant argues that "as a society, we valorize the deceased" and that the "human impulse to venerate those who die young would imbue [her] with added credibility." Finally, defendant argues that there is a "societal taboo against maligning someone after death;" that defendant's "defense will involve impeaching [the complaining witness] and painting her as a liar;" and that knowledge of her death "will incite opprobrium for speaking ill of the dead." The dispositive issue is whether the trial court abused its discretion by concluding that these concerns do not substantially outweigh the probative value of the evidence.

While the credibility of the complaining witness is always important, it is well established that it is especially important when the complaining witness has accused the defendant of sexual assault. As our Supreme Court has observed, "[i]n most criminal sexual conduct cases there are no nonparticipant witnesses to the crime, which reduces the cases to weighing the defendant's credibility against that of the victim's." *Beckley*, 434 Mich at 717. In this case, only the complaining witness and defendant were present for the incident giving rise to the charges, and this therefore is a credibility contest. As such, it would not take much to "tip the scales" in favor of either party.[4] As is discussed above, allowing the complaining witness's absence to go unexplained would likely, and unfairly, undermine her credibility, and this could tip the scales in favor of defendant.

---

[4] See *People v Douglas*, 496 Mich 557, 580; 852 NW2d 587 (2014) (noting that in "credibility contests," which are common in CSC cases, "the wrongful admission of corroborating testimony on either side could tip the scales and result in harmful error" (quotation marks and citations omitted)); see also *People v Martinez*, 507 Mich 855, 855; 952 NW2d 911 (2021) (noting that in "a one-on-one credibility contest" admitting an "additional attack on the complainant's credibility would have tipped the scales" (quotation marks and citation omitted)).

Any unfair prejudice arising from the admission of this evidence could likewise tip the scales in favor of the prosecution. As noted above, defendant argues that knowledge of the complaining witness's death could cause sympathy to influence the jury's decision. Michigan caselaw has recognized that unfair prejudice results when evidence generates sympathy for an alleged victim. Indeed, this Court has stated that "unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, *sympathy*, anger, or shock." *People v Parrott*, 335 Mich App 648, 681; 968 NW2d 548 (2021) (emphasis added). The untimely death of a 21-year-old girl would clearly cause sympathy for her, her friends, and her family. However, the risk of unfair prejudice stemming from this sympathy would be tempered by the fact that her death was completely unrelated to the issues to be adjudicated at trial. Indeed, the analysis of this issue would likely be different if she committed suicide or suffered an overdose, as this could suggest that her death resulted from the trauma she suffered at the hands of defendant. However, the fact that her death was caused by a car accident does not have this tendency to unfairly bolster her credibility or generate anger toward defendant. And evidence that the complaining witness's death was not caused by defendant would eliminate the risk that the jury could infer that defendant played a role in her death, in light of the evidence that defendant threatened to kill her in Snapchat videos. Because the witness's death was wholly unconnected to the merits of this case, we are unconvinced that the jury's sympathy would motivate it to find defendant guilty.

Defendant also argues that the complaining witness's credibility would be unfairly bolstered because people "valorize" the dead and that the jury would look unfavorably upon defendant for attacking the credibility of a person who is dead. While we know of no authority which supports these positions, experience and intuition suggest that these concerns could have some validity. However, simply put, the trial court in this case was placed in a lose-lose situation. One option ran the risk of injecting sympathy for the complaining witness in the jury room, a place where sympathy does not belong. The other option ran the risk of unfairly undermining the credibility of the complaining witness. The trial court was presented with a close call, and the trial court's decision on a close call cannot be an abuse of discretion. See *Thorpe*, 504 Mich at 252. Therefore, the trial court's conclusion that the probative value of this evidence was not substantially outweighed by the risk of unfair prejudice was not an abuse of discretion.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola